[Civ. No. 47846. Second Dist., Div. Five. Dec. 29, 1976.]

RENBA LIL, Plaintiff and Respondent, v.
RALPH KORTZ, as Chief of Police, etc., et al.,
Defendants and Appellants.

---

---

**COUNSEL**

Leonard Putnam, City Attorney, and David M. Schacter, Deputy City Attorney, for Defendants and Appellants.

Frank H. Whitehead, Jr., and Phillip F. Lanzafame for Plaintiff and Respondent.

---

**OPINION**

**ASHBY, J.**—Plaintiff Renba Lil, a corporation, brought this action for an injunction against the Chief of Police and the City Prosecutor of the City of Long Beach to restrain enforcement of Long Beach Municipal Code sections 4195 to 4195.4 relating to nudity of waiters, waitresses, and entertainers in establishments which serve food or beverages. The trial court granted a temporary restraining order and a preliminary injunction against enforcement of the ordinance. Defendants appeal from the order granting a preliminary injunction. (Code Civ. Proc., § 904.1, subd. (f).)

 In Penal Code sections 318.5[1] and 318.6[2] the Legislature made clear its intent to permit cities and counties to regulate "topless" and

---

[1]Penal Code section 318.5 provides:

"Nothing in this code shall invalidate an ordinance of, or be construed to prohibit the adoption of an ordinance by, a county or city, if such ordinance directly regulates the exposure of the genitals or buttocks of or the breasts of any person who acts as a waiter, waitress, or entertainer, whether or not the owner of the establishment in which the activity is performed employs or pays any compensation to such person to perform such activity, in an establishment which serves food, beverages, or food and beverages, including, but not limited to, alcoholic beverages, for consumption on the premises of such establishment.

"The provisions of this section shall not apply to a theater, concert hall, or similar establishment which is primarily devoted to theatrical performances.

"This section shall be known and may be cited as the 'Quimby-Walsh Act.' "

[2]Penal Code section 318.6 provides:

"Nothing in this code shall invalidate an ordinance of, or be construed to prohibit the adoption of an ordinance by, a city or county, if such ordinance relates to any live acts,

"bottomless" exposure of waiters, waitresses, and entertainers in establishments serving food and drink, except theaters and similar establishments, and to regulate such exposure in relation to "live acts, demonstrations, or exhibitions in public places," except theaters and similar establishments, insofar as any such regulation might otherwise have invaded a field previously held to have been preempted by the state. (*Crownover* v. *Musick,* 9 Cal.3d 405, 416 [107 Cal.Rptr. 681, 509 P.2d 497].) However, the Legislature expressly excepted "a theater, concert hall, or similar establishment which is primarily devoted to theatrical performances."

In the *Crownover* case our Supreme Court had before it several consolidated appeals involving ordinances of Orange County, Sacramento County, and the City of Sacramento enacted as authorized by Penal Code sections 318.5 and 318.6. The Supreme Court held "that the ordinances deny neither freedom of speech and expression nor the equal protection of the laws but are in all respects valid and constitutional regulations of conduct." (*Id.,* at p. 431.)

The court pointed out that "the various ordinances involved in the cases at bench . . . follow closely the essential wording of the statutes and by their language conform in scope to the designated regulatory area over which the state has yielded its preemptive claims. Thus the ordinances directly regulate conduct within the delineated statutory limits." (*Id.,* at p. 418.)

In *Crownover* it was also argued that the ordinances unconstitutionally denied equal protection because "they arbitrarily discriminate between theater-type establishments and other public places." The basis of this complaint, said the court, was "the exemptive provisions stating that the ordinances 'shall not apply to a theater, concert hall, or similar establishment which is primarily devoted to theatrical performances.' This statutory phrase repeats verbatim the language of the exception identically contained in Penal Code sections 318.5 and 318.6" (9 Cal.3d at p. 429; citations & fns. omitted.) The court rejected the equal protection argument, finding a rational relationship in the distinction. The court pointed out "that theater entertainers usually perform on a

---

demonstrations, or exhibitions which occur in public places, places open to the public, or places open to public view and involve the exposure of the private parts or buttocks of any participant or the breasts of any female participant, and if such ordinance prohibits an act or acts which are not expressly authorized or prohibited by this code.

"The provisions of this section shall not apply to a theater, concert hall, or similar establishment which is primarily devoted to theatrical performances."

stage removed from the audience, while waiters and waitresses must by virtue of their calling mingle constantly with the patrons. Similarly, if entertainers perform on a stage in a bar, that stage is likely to be much smaller and closer to the patrons than is a stage located in a theater. As noted *supra* in our discussion of the police power, there are conceivable and legitimate state purposes involved in regulating the exposure of the pubic area, genitals or breasts by waiters, waitresses and entertainers. Such purposes conceivably include the furtherance of the public order, morals and welfare. But the same considerations are arguably not involved in a theater where nude persons are generally separated from the customers by a stage of large dimensions. Situations provide a rational basis to treat differently nude performers in theaters, on the one hand, and nude performers, waiters and waitresses in establishments such as plaintiffs' on the other." (*Id.,* at pp. 430-431.)

Defendants argue that the Long Beach ordinance involved in this case is identical in all pertinent respects to the Sacramento ordinances and that it is therefore valid under *Crownover.*[3] The trial court found to the contrary, that the specific definition of "theater" contained in section

[3]Long Beach Municipal Code provides in pertinent part:

"SECTION 4195—Exposure of Waiters, Waitresses and Entertainers—No person shall, while acting as a waiter, waitress or entertainer in an establishment which serves food, beverages, or food and beverages, including, but not limited to, alcoholic beverages, for consumption on the premises of such establishment, expose his or her genitals, pubic hair, buttocks, natal cleft, perineum, anal region or pubic hair region, or shall any such person expose any device, costume or covering which gives the appearance of or simulates the genitals, pubic hair, buttocks, natal cleft, perineum, anal region or pubic hair region.

"SECTION 4195.1—Exposure of Breasts by Waitresses or Entertainers Prohibited —No female person shall, while acting as a waitress or entertainer in an establishment which serves food, beverages, or food and beverages, including, but not limited to, alcoholic beverages, for consumption on the premises of such establishment, expose the areola of either or both breasts or any portion of either or both breasts below the areola thereof, or shall any such female person employ any device which is intended to simulate such portions of either or both breasts, or shall any such female person wear any type of clothing so that any portion of either or both breasts may be observed.

"SECTION 4195.2—Procuring Public Exposure Prohibited—No person shall permit, procure, counsel or assist another person to violate any provision of Sections 4195 or 4195.1.

"SECTION 4195.3—Exceptions—The provisions of Sections 4195, 4195.1 or 4195.2 do not apply to a theatrical performance in a theater, concert hall or similar establishment which is primarily devoted to theatrical performances.

"SECTION 4195.4—Theater—Definition—As used in Section 4195.3 'theater' means building, playhouse, room, hall or other place having a permanent stage upon which movable scenery is placed and theatrical or vaudeville or similar performances are given and permanently affixed seats so arranged that a body of spectators can have an unobstructed view of the stage, and for which a City license for a theater is in full force and effect."

4195.4 invaded the area reserved to the state in Penal Code sections 318.5 and 318.6 and was therefore invalid. The court accepted plaintiff's argument that the definition of "theater" rendered the entire ordinance void, and did not determine the merits of the controversy whether plaintiff's establishment was similar to a theater devoted primarily to theatrical performances or, as contended by defendants, was simply a bar with barmaids who occasionally removed their bikini tops and danced to jukebox music. The trial court thereupon issued the preliminary injunction against enforcement of the entire ordinance.

■ We find that the specific definition of "theater" in section 4195.4 of the Long Beach ordinance invades the area expressly excepted in Penal Code sections 318.5 and 318.6 and is therefore invalid. Contrary to defendants' contention, the Long Beach ordinance is not identical to the Sacramento ordinances validated in *Crownover.* ■ However, section 4195.4 is severable from the remaining portions of the ordinance, which are valid under *Crownover,* and therefore the order granting the preliminary injunction should be reversed.

Section 4195.3, which provides, "[t]he provisions of Sections 4195, 4195.1 or 4195.2 do not apply to a theatrical performance in a theater, concert hall or similar establishment which is primarily devoted to theatrical performances," like the Sacramento ordinances, "follow[s] closely the essential wording of the statutes" and "conform[s] in scope to the designated regulatory area over which the state has yielded its preemptive claims." (9 Cal.3d at p. 418.)

Under the definition in section 4195.4, however, an establishment cannot qualify as a theater unless it has (1) a permanent stage, (2) movable scenery, (3) permanently affixed seats, (4) an unobstructed view of the stage, and (5) a city license for a theater.

As noted in an expert's declaration submitted by plaintiff in support of the injunction, there can be many places which constitute theaters by anyone's definition, which lack one or more of those attributes. ■ In excepting theaters from the operation of Penal Code sections 318.5 and 318.6, the Legislature must be held to have intended the word to be given its ordinary meaning. A local entity may not so narrowly define theater as to prevent the courts from fulfilling their function of interpreting the Legislature's language. This must be done on a case-by-case basis. Undoubtedly there will occur close cases where drawing the line between a theater and some other establishment may be

difficult, but that is always the case. The fact that a particular establishment lacks any or all of the attributes mentioned in section 4195.4 may well be persuasive evidence that it is not a theater, but the city may not make it an essential element by definition.[4]

Defendants' argument that to allow a case-by-case approach would "cause consternation and uncertainness on behalf of prospective defendants" is simply contrary to the statement of our Supreme Court in *Crownover* that even without a specific definition the term "theater" is not "statutorily vague."[5]

Defendants argue that the specific definition in section 4195.4 is taken from the Sacramento ordinances involved in *Crownover*. What defendants ignore is that the Sacramento ordinances contained two provisos which are not found in the Long Beach ordinance. Those ordinances provided that all words were intended to have the same sense and meaning as those words were used in Penal Code sections 318.5 and 318.6. At the end of the specific definition of "theater" in the Sacramento ordinances were express declarations that "[t]his definition does not supersede" the provisions declaring the words to be used in the same sense as the Penal Code. (9 Cal.3d at pp. 412-413, fn. 6, and pp. 414-415, fn. 9.) Thus, under the very terms of the Sacramento ordinances, an establishment is free to argue that it constitutes a theater even though it lacks, e.g., a permanent stage or an unobstructed view of the stage. No such leeway is provided by the Long Beach ordinance.

By imposing these additional requirements, section 4195.4 conflicts with Penal Code sections 318.5 and 318.6 and is therefore invalid. (Cal. Const., art. XI, § 7; *In re Lane*, 58 Cal.2d 99, 102 [22 Cal.Rptr. 857, 372 P.2d 897].)[6]

---

[4]If a theater does not comply with a valid municipal licensing law, the city is of course free to enforce that law. It cannot, however, pass an ordinance which dictates the type of entertainment an unlicensed theater may offer, contrary to the Penal Code.

[5]The Supreme Court said, at page 429, footnote 18: "The Orange County ordinance does not define this terminology. However, the two Sacramento County ordinances identically provide further information. The City of Sacramento ordinance also supplies a definition, whose wording differs in only insubstantial form from that contained in the county ordinances. While we need not repeat either definition we note in passing that we do not consider either statement to be statutorily vague. Nor do we believe that the exemption is vague even as it stands by itself in the Orange County ordinance. None of the plaintiffs raises vagueness as an issue before us." (Citations and reference to fns. omitted.)

[6]Defendants appear to argue that the Legislature intended to allow local definitions of "theater" as a kind of "local option." To the contrary, the Legislature expressly *reserved* theaters from the area over which it yielded the state's preemptive control. (9 Cal.3d at p. 416.)

Section 4195.4 is, however, easily severable from the rest of the ordinance in question. (See *City and County of San Francisco* v. *Cooper,* 13 Cal.3d 898, 930 [120 Cal.Rptr. 707, 534 P.2d 403].) Without section 4195.4 the ordinance resembles in all significant respects the Orange County ordinance upheld in *Crownover* and is, as such, enforceable. The trial court therefore erred in restraining enforcement of the entire statute.

The nature of plaintiff's establishment was not determined below. On remand, the trial court can adjudicate plaintiff's claim that its establishment constitutes a theater under the ordinance as properly limited.

The order granting a preliminary injunction is reversed.

Kaus, P. J., and Hastings, J., concurred.