[Crim. No. 26146. Second Dist., Div. Four. Apr. 16, 1975.]

THE PEOPLE, Plaintiff and Appellant, v.
JAMES J. PERRINE, Defendant and Respondent.

THE PEOPLE, Plaintiff and Appellant, v.
LARRY MARTINEZ GERARDO, Defendant and Respondent.

**COUNSEL**

Joseph P. Busch, District Attorney, Donald J. Kaplan, Harry B. Sondheim and Dirk L. Hudson, Deputy District Attorneys, for Plaintiff and Appellant.

Richard S. Buckley, Public Defender, Harold E. Shabo, Glenn A. Nolte, Dennis A. Fischer, Deputy Public Defenders, Hecht & Diamond and Roger Jon Diamond for Defendants and Respondents.

## OPINION

**FILES, P. J.**—In these six appeals which have been consolidated for hearing and decision, the principal question is the constitutionality of the Los Angeles County ordinance which requires the proprietor of a picture arcade to have a licensed manager on the premises at all times during which the arcade is open and the proprietor is absent.

In municipal court cases M 147997, M 148139, M 149540, M 149542 and M 152532 James J. Perrine was charged with the offense of operating a picture arcade without a licensed manager being present, a misdemeanor violation of Los Angeles County Ordinance 5860, section 2732.

In case M 148138 Larry Martinez Gerardo was charged with acting as manager of a picture arcade without a license.

In each of the cases the municipal court granted the defendant's motion to dismiss upon the ground that the ordinance was so vague and uncertain as to be void under both the state and federal Constitutions. No evidence was taken in the trial court. The ruling was based exclusively upon the face of the ordinance and the court's view of the applicable law.

Pursuant to Penal Code section 1466 the People appealed to the appellate department of the superior court, which affirmed the orders of dismissal. Upon certification from the appellate department, we ordered the cases transferred here to settle an important question of law. (Rules 62 and 63, Cal. Rules of Court.)

It is a matter of some importance when any court refuses to enforce an ordinance upon the belief that it is unconstitutional. The issue raised in this case goes far beyond its impact upon picture arcades. The identical requirement of a licensed manager on the premises is in the portion of the ordinance which applies to places of entertainment generally. The procedure for issuing such licenses and the grounds for denial of a license are found in some sections applicable to occupational licenses generally. If the lower courts were correct in this case, there would be no valid requirement for a licensed manager in any of the places of entertainment referred to in the ordinance.

The licensing system applicable to picture arcades is a part of County Ordinance 5860, which provides for the licensing of a variety of

occupations and businesses. Chapter XVI of that ordinance, commencing with section 2701, deals with picture arcades, but must be read with the general provisions appearing elsewhere in the ordinance.[1]

Section 2701 provides: " 'Picture Arcade' means any premises where there is maintained one or more machines or contrivances to show still or motion pictures and for which any charge, consideration or payment is required or as an incident to some other type of business or activity, except those establishments for which there has been issued a valid theater or motion picture theater license pursuant to Sections 373 and 374."

Section 2711 requires the proprietor to obtain a license from the tax collector. In article 4 of chapter XVI, headed "General Regulations," is section 2732, which reads as follows:

"All establishments licensed or required to be licensed under this chapter shall have a responsible person on the premises to act as manager at all times during which the picture arcade is open. Such manager, if not the licensee, shall first procure a license as such manager and pay a license fee of $10.00 per year.

"A person other than the licensee shall not be employed as, or act as, such a manager until he has the license required by this section."

Other sections of article 4 limit the hours of operation (9 a.m. to 2 a.m.), regulate lighting and visibility conditions and accessibility for inspection, and prohibit the use of alcohol or drugs on the premises and the presence of persons under the influence and unescorted minors.

The general provisions of Ordinance 5860 list the grounds for refusing licenses for "activities which may involve free speech" (§ 82.7) separately from "activities not involving free speech" (§ 83). A picture arcade is listed in the former category. The only grounds given for refusing a license for such an activity are (a) that the building, structure, equipment or location fails to meet legal standards, or (b) that the applicant, his employee, agent or manager has made a false statement in an application or report.

The grounds for denial of a license for other activities are more extensive.

---

[1]All section numbers, unless otherwise indicated, refer to Ordinance 5860.

The ordinance also prescribes two procedures for the issuance of licenses. Certain listed licenses, of which the picture arcade license is one, may be issued in the first instance only after a public hearing (§ 39).

For other licenses, no hearing is required unless the tax collector, after referring the application to other agencies for investigation and report, proposes to deny the license or grant it only on conditions. In such instances the applicant is entitled to demand a hearing after receiving notice of the tax collector's intentions (§ 82).

For some kinds of licenses, after the application has been filed and the fee paid, the collector's receipt for the fee operates as a temporary license while that application is under investigation (§ 44.5).

For other kinds of license, of which the manager's license is one,[2] the activity may not be carried on until a license other than the receipt has been issued (§ 44.6).

Before discussing constitutional principles it is helpful to examine the nature of Perrine's activity in relation to the legitimate objectives of police power regulations.

Beyond doubt, a picture arcade is engaged in a business protected by the First Amendment to the federal Constitution. (See *Joseph Burstyn, Inc.* v. *Wilson* (1952) 343 U.S. 495 [96 L.Ed. 1098, 72 S.Ct. 777].) The county ordinance recognizes this by providing in section 2721, "A license for a picture arcade shall be granted or denied as provided in section 82.7."

The fact that Perrine is engaged in an activity protected by the First Amendment does not make him immune to regulations which do not impair his exercise of his constitutionally protected rights. (See e.g., *Pittsburgh Press Co.* v. *Human Rel. Comm'n.* (1973) 413 U.S. 376, 382-383 [37 L.Ed.2d 669, 675-676, 93 S.Ct. 2553]; *United States* v. *O'Brien* (1968) 391 U.S. 367 [20 L.Ed.2d 672, 88 S.Ct. 1673]; *Prince* v. *Massachusetts* (1944) 321 U.S. 158, 167-169 [88 L.Ed. 645, 653-654, 64

---

[2]The list in section 44.6 (which was last amended Sept. 17, 1971) includes the license for "male manager." Section 2732, as it read in 1971, required that a picture arcade have a "male manager." Since the amendment of November 11, 1972, the words "male manager" have been replaced by the words "a responsible person on the premises to act as manager." We therefore assume that the anachronistic term "male manager" in section 44.6 refers to the manager presently required, whether male or female, for a picture arcade under section 2732.

S.Ct. 438]; *Crownover* v. *Musick* (1973) 9 Cal.3d 405 [107 Cal.Rptr. 681, 509 P.2d 497].)

A picture arcade is a business, carried on in a place which the public generally is invited to enter and use. Since it is a place of entertainment, its patrons are not expected to enter with the solemnity of a business visitor at a mercantile establishment. Ordinarily those entering a picture arcade are seeking amusement, relaxation or excitement, possibly sexual stimulation or gratification, depending on the taste or mood of the individual and the kind of pictures exhibited. Among such visitors it is foreseeable that some will be predisposed to conduct which is offensive, dangerous to others and even unlawful. The potential for misuse of the premises, for law violations, and for bodily harm to law-abiding patrons, is obvious, as is the concomitant need for continuous supervision.

As an occupier of real property the proprietor of a picture arcade owes a duty both to the public at large and to his patrons as individuals to take steps necessary to prevent civil wrongs and the use of the premises for criminal activities. The existence of such duties, independent of any licensing ordinance, is exemplified by rules imposing both criminal[3] and civil[4] liability for occurrences upon the premises.

The "General Regulations" in the ordinance covering the operation of a picture arcade impose some additional specific responsibilities upon the proprietor of such premises: He must exclude persons possessing or under the influence of any alcoholic beverage or drugs (§ 2741); he may not permit persons under 18 years of age to visit the premises unless accompanied by a parent, guardian or spouse over 21 years of age (§ 2743). These rules would be ineffective unless there were present a person responsible for enforcing them.

Another relevant circumstance is that machines which show pictures can be coin-operated, so that it is physically possible (and perhaps economically feasible) to operate the business without the presence of any representative of the proprietor. All of these circumstances demon-

---

[3]For example, he may not permit gambling (Pen. Code, § 331) or bookmaking (Pen. Code, § 337a, subd. 5) on his premises. He may not maintain a public nuisance on his property (Pen. Code, § 372). This may involve the behavior of his patrons on the front sidewalk. (*People* v. *Montoya*, 137 Cal.App. Supp. 784 [28 P.2d 101].)

[4]For example, he may be civilly liable to a patron for failing to protect against assault by another patron (*Taylor* v. *Centennial Bowl, Inc.* (1966) 65 Cal.2d 114 [52 Cal.Rptr. 561, 416 P.2d 793]) or failing to correct or warn of a hazardous condition (*Chance* v. *Lawry's, Inc.*, 58 Cal.2d 368 [24 Cal.Rptr. 209, 374 P.2d 185]).

strate the reasonableness of requiring that there be some responsible person on the premises at all times during which the business is open to the public.

█ The reason given by the municipal court judge for voiding section 2732 was that "the word 'responsible', as used in the ordinance is so void of definition that the statute as a whole is vague and uncertain."

The requirement of section 2732 is that the establishment "shall have a responsible person on the premises to act as manager." This clause is a description of a job function rather than an attempt to define the qualifications of the individual who performs it. The word "responsible" describes the relationship of the manager to the proprietor, and to the patrons and the public. The manager is a "responsible" person in the sense that he is given responsibility. The manager must be authorized to exercise the powers of the proprietor, and perform the duties which the law imposes upon the proprietor in dealing with conditions and persons on the premises. The proprietor is required to provide a "responsible person," as contrasted with a janitor or cashier who is not expected to look out for the safety and welfare of patrons or deal with dangerous or unlawful behavior on the premises.

It is a well-settled principle that if the terms of a statute are by a fair and reasonable interpretation capable of a meaning consistent with the requirements of the Constitution the statute will be given that meaning, rather than another in conflict with the Constitution. (*Braxton* v. *Municipal Court* (1973) 10 Cal.3d 138, 145 [109 Cal.Rptr. 897, 514 P.2d 697].) By that standard, section 2732 is constitutional.

The ordinance defines the function of a manager clearly enough, leaving to the proprietor the selection of the individual to be employed, from among those holding or able to obtain a manager's license.

█ The arguments raised by Perrine on this appeal are bottomed upon the undeniable fact that he is engaged in a First Amendment activity and the unanalyzed assumption that the requirement of section 2732 impairs the exercise of his First Amendment rights.

As the proprietor of a business of exhibiting pictures to the public, Perrine is entitled to select and exhibit such pictures as he chooses without governmental censorship (subject to some exceptions not material here). The county ordinance places no restrictions whatever upon

Perrine's choice of pictures, nor does it impose any burden or sanction tending to inhibit his freedom of choice. Moreover, he may delegate the power of choice, or obtain advice or assistance in exercising it, from any person, whether licensed or not. Conceivably he may want to delegate that responsibility to a manager who is employed in conformity with the mandate of section 2732, but nothing in the ordinance connects the function of the required manager with the function of selecting the pictures to be exhibited. The only responsibility imposed upon the manager by the ordinance is to look after the premises in the proprietor's absence.

In *United States* v. *O'Brien, supra,* 391 U.S. 367, the court upheld the conviction of a man who had burned his draft card as a form of protest against war. In rejecting the defendant's contention that his conduct was protected by the First Amendment, the court applied a four-point test which it stated thus: ". . . we think it clear that a government regulation is sufficiently justified if it is within the constitutional power of the Government; if it furthers an important or substantial governmental interest; if the governmental interest is unrelated to the suppression of free expression; and if the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest." (391 U.S. at p. 377 [20 L.Ed.2d at p. 680].)

The requirement of a licensed manager in Perrine's picture arcade easily passes the *O'Brien* test. The constitutional power of the county to regulate and license for purposes of health and safety is unquestioned. The county has a substantial interest in preventing the kind of dangerous or unlawful conduct which may be anticipated in an unattended picture arcade. That governmental interest is unrelated to the suppression of free expression. The requirement of a manager on the premises is essential to the furtherance of that interest; and the requirement that he obtain a license, issued upon the same terms as apply to occupational licenses generally, does not at all restrict the First Amendment freedoms of the picture arcade.

If the licensing standards for a manager were so stringent, or the licensing authority were to act so arbitrarily as to impede Perrine in finding and hiring a manager, the effect could be to impede his ability to operate at any time other than when he could be present himself; and such a situation could amount to a restraint on Perrine's exercise of his constitutional rights. But the ordinance on its face does not indicate any likelihood of such a restraint.

The standards for a manager's license, as set forth in section 83, are the same as apply to most of the other occupational licenses for activities not involving free speech. Since the selection of any particular person as manager of the premises has no bearing upon the proprietor's ability to exercise his First Amendment rights freely, it is proper that the standards for issuing a manager's license be the same as those for other occupational licenses for activities not involving free speech. These standards, as set forth in section 83, are substantially similar to those in Municipal Code of the City of Los Angeles, section 103.31, which have been held to be adequate and not unconstitutionally vague for licensing matters not involving First Amendment activities. (*Sunset Amusement Co.* v. *Board of Police Commissioners* (1972) 7 Cal.3d 64, 71-75 [101 Cal.Rptr. 768, 496 P.2d 840].) These standards, which are in current use for a wide variety of occupational licenses, do not, on their face, appear to be an obstacle to Perrine's finding qualified persons who can obtain licenses.

We do not overlook the fact that this ordinance authorizes an investigation before the license is issued, and there is no stated time limit within which the tax collector must act. Obviously, if the proprietor desires to employ a manager who does not already possess a license, the proprietor must anticipate his needs so as to allow time for the licensing process to be completed. From the face of the ordinance it is apparent that a high proportion of the general population can meet the standards for issuance of a manager's license, these being the same standards provided for most occupational licenses issued either by the County or the City of Los Angeles. Upon this record we cannot assume that qualified persons are so scarce that the tax collector's delay in issuing a license to a particular applicant would have the effect of suppressing or influencing or harassing the operation of a picture arcade.

■ In the trial court, and again in this court, Perrine's counsel has asserted that the two unlicensed persons whom he is accused of having employed had made applications for licenses, and that no licenses had been issued. Counsel desires this court to determine, in this case, that the county officials are arbitrarily using the licensing ordinance to harass Perrine. The record on appeal does not indicate that the municipal court took judicial notice of anything except the ordinance itself in holding it to be unconstitutional.

The suggestion that this appellate court conduct an investigation by means of judicial notice is wholly impractical, and would take this court

far beyond its proper function of appellate review. If we were to notice the documents which counsel says will show an arbitrary refusal, we would then be obliged to take the next step and inquire as to the tax collector's explanation for not issuing the licenses. A criminal appeal would become a de novo review of an administrative adjudication, using judicial notice as a substitute for evidence. The request that this court take judicial notice of matters outside the record must therefore be denied.

■ Perrine's final contention is that the ordinance is unconstitutional because "other business establishments are not required to have licensed managers on the premises." He does not state what "other" businesses he regards as comparable in that respect. Contrary to counsel's assertions, the Ordinance 5860 also requires that game arcades (§ 328.8), model studios (§ 2643) and all entertainment licensees (§ 3007) "have a responsible person on the premises to act as manager," and that such a manager have a license.

The ordinance defines "entertainment" to include "any act, play, review, pantomime, scene, song, dance act, song and dance act, or poetry recitation, conducted or participated in by any professional entertainer in or on premises to which the public is admitted, or in any proprietary club." Entertainment also includes fashion shows and the exhibition of motion pictures in restaurants or bars. (§ 2802.)

■ It thus appears the requirement of a licensed manager on the premises applies to a great many enterprises in the county which are engaging in activities protected by the First Amendment. The general sections of the ordinance, specifying the procedure and the qualifications for the issuance of a manager's license, apply both to picture arcades and to entertainment activities generally. If the ordinance is unconstitutional on its face, it is invalid as to all such activities. The generality of the ordinance refutes the assumption made by Perrine's counsel that the licensing requirement is a device to discriminate against picture arcades or against Perrine as an individual.

The separate brief filed on behalf of Gerardo, an allegedly unlicensed manager, also is based upon the assumption that the requirement that he obtain a manager's license is a restraint upon his First Amendment rights. As has been explained above, the function for which he is required to be licensed is not to exercise his rights of free speech, but to look after the premises in which Perrine exercises his First Amendment

rights. There is nothing in the ordinance susceptible to the interpretation that the person who determines the subject matter or content of the pictures must have the license required by section 2732 in order to carry out those functions. Requiring Gerardo to have a manager's license is no more a burden upon free speech than requiring the driver of a newspaper truck to have a driver's license.

In each case, the order dismissing the complaint is reversed.

Jefferson, J., and Kingsley, J., concurred.

Petitions for a rehearing were denied May 6, 1975, and respondents' petitions for a hearing by the Supreme Court were denied June 11, 1975.