[Crim. No. 21123. Aug. 7, 1980.]

THE PEOPLE, Plaintiff and Respondent, v.
WHEATLY GLAZE, Defendant and Appellant.

COUNSEL

W. Michael Mayock for Defendant and Appellant.

Brown, Weston & Sarno, Fleishman, Brown, Weston & Rohde, David M. Brown and G. Randall Garrou as Amici Curiae on behalf of Defendant and Appellant.

Burt Pines, City Attorney, George C. Eskin, Chief Assistant City Attorney, Rand Schrader, Laurie Harris and S. Thomas Todd, Deputy City Attorneys, for Plaintiff and Respondent.

OPINION

**BIRD, C. J.**—Under the California Constitution, may a city pass an ordinance which requires only picture arcades to close between the hours

of 2 a.m. and 9 a.m. in order to prevent the possibility of masturbation by any of their customers?

## I

Appellant Glaze was charged in March 1978 with a violation of Los Angeles Municipal Code section 103.101, subdivision (g),[1] which provides that "[e]ach picture arcade must remain closed between the hours of 2:00 A.M. and 9:00 A.M., and all customers, patrons, and visitors must be excluded therefrom between those hours. Where only one coin operated still or motion picture machine, projector or similar contrivance is maintained and such device is not the primary business, then, if that device remains inoperative between the hours of 2:00 A.M. and 9:00 A.M., customers, patrons and visitors need not be excluded from the premises." Appellant demurred to the complaint on the grounds that section 103.101, subdivision (g) is unconstitutional on its face because (1) it violates freedom of expression as guaranteed by the First Amendment of the United States Constitution and by article I, section 2 of the California Constitution;[2] (2) it discriminates against picture arcade operators in violation of state and federal constitutional guarantees of equal protection (U.S. Const., 14th Amend.; Cal. Const., art. I, § 7); and (3) it purports to regulate in an area preempted by the state Legislature in violation of article XI, section 7 of the California Constitution. The trial court overruled appellant's demurrer and held the ordinance was not unconstitutional on its face. The matter proceeded to trial and appellant was found guilty and fined $100. This appeal followed.[3]

---

[1]All code references hereinafter are to the Los Angeles Municipal Code unless otherwise specified.

Section 103.101 deals primarily with the issuance, revocation and suspension of police commission permits to operate arcades. Violation of its provisions is made a misdemeanor by section 11.00, subdivision (m).

[2]Article I, section 2 of the California Constitution provides: "Every person may freely speak, write and publish his or her sentiments on all subjects, being responsible for the abuse of this right. A law may not restrain or abridge liberty of speech or press."

This section is more protective of speech than the First Amendment of the United States Constitution. (*Wilson* v. *Superior Court* (1975) 13 Cal.3d 652, 658 [119 Cal.Rptr. 468, 532 P.2d 116].) This court therefore only addresses the question whether the challenged subdivision is consistent with the California Constitution. Nevertheless, in keeping with convention, the free speech rights at stake will be referred to as First Amendment rights.

[3]Appellant attacks only the facial validity of section 103.101, subdivision (g). Therefore, no transcript of the actual trial was made a part of the record before this court.

*EWAP, Inc.* v. *City of Los Angeles* (1979) 97 Cal.App.3d 179 [158 Cal.Rptr. 579], involved two other subdivisions of section 103.101. In that case, the court held that subdivision (c)(4) was an invalid prior restraint on freedom of expression in that it de-

## II

This court must determine the facial validity of this ordinance. █ The law is clear that a municipality has the general power to regulate commercial businesses where the regulation is reasonable and nondiscriminatory. (See *Burton* v. *Municipal Court* (1968) 68 Cal.2d 684, 689 [68 Cal.Rptr. 721, 441 P.2d 281]; *Justesen's F.S., Inc.,* v. *City of Tulare* (1938) 12 Cal.2d 324, 328-329 [84 P.2d 140].) For example, it is permissible under a municipality's police powers to reasonably restrict the hours of operation of an economic enterprise. (E.g., *In re Sumida* (1918) 177 Cal. 388 [170 P. 823]; *Brix* v. *City of San Rafael* (1979) 92 Cal.App.3d 47 [154 Cal.Rptr. 647].) The reasonableness of such a restrictive ordinance "is dependent upon the nature of the business being regulated and the degree of threat that the operation of such business presents to the tranquility, good order, and well-being of the community at large. So long as a 'patent relationship between the regulations and the protection of the public health, safety, morals, or general welfare' exists, the regulations will be considered reasonable." (*7978 Corporation* v. *Pitchess* (1974) 41 Cal.App.3d 42, 47 [115 Cal. Rptr. 746]; accord *Brix* v. *City of San Rafael, supra,* 92 Cal.App.3d at p. 51.)

█ A different test is used, however, if the ordinance, not uniformly applicable to all commercial enterprises,[4] involves restrictions on activities protected by the First Amendment. (See *Sunset Amusement Co.* v. *Board of Police Commissioners* (1972) 7 Cal.3d 64, 72-73 [101 Cal. Rptr. 768, 496 P.2d 840]; *Saunders* v. *City of Los Angeles* (1969) 273 Cal.App.2d 407, 411-412 [78 Cal.Rptr. 236].) A higher standard of review is required because of the "preferred position" of freedom of speech in our system of ordered liberty. (*Kovacs* v. *Cooper* (1949) 336 U.S. 77, 88 [93 L.Ed. 513, 523, 69 S.Ct. 448, 10 A.L.R.2d 608]; see also *Burton* v. *Municipal Court, supra,* 68 Cal.2d at pp. 690-691.)[5] Un-

---

nied a permit to any applicant who had knowingly allowed lewd conduct at any picture arcade within the preceding two years. The court upheld subdivision (i), which required the interior of picture arcades to be visible upon entrance and prohibited enclosed or concealed booths.

[4]Where the ordinance *singles out* for regulation a First Amendment protected activity, the ordinance must also be content-neutral. (E.g., *Erznoznik* v. *City of Jacksonville* (1975) 422 U.S. 205 [45 L.Ed.2d 125, 95 S.Ct. 2268].) The appellant has not challenged the present ordinance as content-based. Therefore, this court does not address the issue of the ordinance's content neutrality.

[5]A higher standard of review is not required where access to protected speech is not restricted, even though First Amendment activity is implicated. (E.g., *Young* v. *Ameri-*

der this test, the government must bear the burden of showing that the regulation is narrowly and explicitly drawn and necessary to further a legitimate government interest. (*Kash Enterprises, Inc.* v. *City of Los Angeles* (1977) 19 Cal.3d 294, 303 [138 Cal.Rptr. 53, 562 P.2d 1302]; *Welton* v. *City of Los Angeles* (1976) 18 Cal.3d 497, 504 [134 Cal. Rptr. 668, 556 P.2d 1119]; *Westfall* v. *Board of Com'rs of Clayton Cty.* (N.D.Ga. 1979) 477 F.Supp. 862, 870, 871.)

■ The operation of a picture arcade has been held to be an activity which is protected by the First Amendment. (*EWAP, Inc.* v. *City of Los Angeles, supra*, 97 Cal.App.3d at p. 184; *People* v. *Perrine, supra*, 47 Cal.App.3d at p. 257.) The fact that a picture arcade is a profit-oriented business (see *Welton* v. *City of Los Angeles, supra*, 18 Cal.3d at pp. 503-504; *Bigelow* v. *Virginia* (1975) 421 U.S. 809, 818 [44 L.Ed.2d 600, 609, 95 S.Ct. 2222]), or that it may exhibit pictures which are offensive or lacking in social worth is not relevant. (See *Welton* v. *City of Los Angeles, supra*, 18 Cal.3d at p. 504; *Cohen* v. *California* (1971) 403 U.S. 15, 24-26 [29 L.Ed.2d 284, 293-294, 91 S.Ct. 1780]; *N.A.A.C.P.* v. *Button* (1963) 371 U.S. 415, 444-445 [9 L.Ed.2d 405, 424-425, 83 S.Ct. 328].) As the Supreme Court stated in *Cohen* v. *California, supra*, 403 U.S. at page 25 [29 L.Ed.2d at page 294], "We cannot lose sight of the fact that, in what otherwise might seem a trifling and annoying instance of individual distasteful abuse of a privilege, [the] fundamental societal values [of the First Amendment] are truly implicated. That is why '[wholly] neutral [statements]... come under the protection of free speech as fully as do Keats' poems or Donne's sermons,'...."

■ The closing hour requirement in the present case prohibits the showing of pictures between 2 a.m. and 9 a.m. Indeed, customers and other visitors cannot be present during those hours even if the machines are not operated. Therefore, this case involves more than the incidental infringement of freedom of expression. (See *Va. Pharmacy Bd.* v. *Va. Consumer Council* (1976) 425 U.S. 748, 756 [48 L.Ed.2d 346, 354, 96 S.Ct. 1817]; *Martin* v. *Struthers* (1943) 319 U.S. 141, 143 [87 L.Ed. 1313, 1316, 63 S.Ct. 862]; *Westfall* v. *Board of Com'rs of Clayton Cty., supra*, 477 F.Supp. at p. 871.) It follows that the ordinance is con-

can Mini Theatres (1976) 427 U.S. 50, 62, 71, fn. 35, 73 (conc. opn. of Powell, J.), 78 (conc. opn. of Powell, J.) [49 L.Ed.2d 310, 321, 327, 330, 96 S.Ct. 2440]; *Pittsburgh Press Co.* v. *Human Rel. Comm'n* (1973) 413 U.S. 376, 383 [37 L.Ed.2d 669, 675, 93 S.Ct. 2553]; *Walnut Properties, Inc.* v. *City Council* (1980) 100 Cal.App.3d 1018, 1021, 1023 [161 Cal.Rptr. 411]; *People* v. *Perrine* (1975) 47 Cal.App.3d 252, 260 [120 Cal.Rptr. 640]; *Antonello* v. *City of San Diego* (1971) 16 Cal.App.3d 161, 166 [93 Cal.Rptr. 820].)

stitutional only if the city can prove it was narrowly drawn and necessary to a legitimate governmental interest. (*Kash Enterprises, Inc.* v. *City of Los Angeles, supra*, 19 Cal.3d at p. 303; *Welton* v. *City of Los Angeles, supra*, 18 Cal.3d at p. 504; see also *United States* v. *O'Brien* (1968) 391 U.S. 367, 377 [20 L.Ed.2d 672, 680, 88 S.Ct. 1673]; *EWAP, Inc.* v. *City of Los Angeles, supra*, 97 Cal.App.3d at p. 189.)

The city contends that the closing of picture arcades between 2 a.m. and 9 a.m. is a constitutional exercise of its police powers because the closing helps prevent masturbation during those hours when law enforcement problems are greatest. While this governmental purpose may be laudable, the means selected for its accomplishment fail to meet the strict standards required by the Constitution. Rather than dealing directly with the objectionable conduct, the ordinance curtails the protected interests of persons engaged in First Amendment activity. (Cf. *Schneider* v. *State* (1939) 308 U.S. 147, 162 [84 L.Ed. 155, 165, 60 S.Ct. 146]; *California* v. *LaRue* (1972) 409 U.S. 109, 131-133 [34 L.Ed.2d 342, 359-360, 93 S.Ct. 390] (dis. opn. of Marshall, J.).) Arguably, crime in the streets could be reduced by prohibiting all persons from going out in public. However, when fundamental liberties are at stake, the test in a free society is whether there are "less drastic means" available to accomplish the government's purpose. (*Wollam* v. *City of Palm Springs* (1963) 59 Cal.2d 276, 287 [29 Cal.Rptr. 1, 379 P.2d 481], quoting *Shelton* v. *Tucker* (1960) 364 U.S. 479, 488 [5 L.Ed.2d 231, 237, 81 S.Ct. 247]; see also *Welton* v. *City of Los Angeles, supra*, 18 Cal.3d at pp. 507-508; *Police Department of Chicago* v. *Mosley* (1972) 408 U.S. 92, 101, fn. 8 [33 L.Ed.2d 212, 220, 92 S.Ct. 2286].)

The government may deal directly with masturbation in public picture arcades by persons who know or should know of the presence of others who may be offended by such conduct by arresting and prosecuting them. (*Pryor* v. *Municipal Court* (1979) 25 Cal.3d 238 [158 Cal. Rptr. 330, 599 P.2d 636].) Respondent concedes that this alternative would be less restrictive of First Amendment rights, but argues that the closing-hours requirement is necessary because of the limited number of police available during the early morning hours.

A similar claim was made in *Skaggs* v. *City of Oakland* (1936) 6 Cal.2d 222 [57 P.2d 478]. The government tried to justify an ordinance restricting deliveries of bakery goods to those times when food and sani-

tary inspectors might reasonably be expected to be on duty. The court rejected that argument and observed that "it is not a valid exercise of police power to restrict unnecessarily a lawful occupation conducted in a reasonable manner, merely that it may accord with the convenience of inspectors." (*Id.*, at p. 224; accord *Justesen's F.S., Inc.,* v. *City of Tulare, supra,* 12 Cal.2d at p. 332; see also *Schneider* v. *State, supra,* 308 U.S. at p. 164 [84 L.Ed. at p. 166]; *Stanley* v. *Georgia* (1969) 394 U.S. 557, 567-568 [22 L.Ed.2d 542, 550-551, 89 S.Ct. 1243].) The same reasoning applies with even greater force where First Amendment rights are involved.

The record before this court fails to show either that criminal activity is particularly acute at picture arcades or that it is prevalent between the hours of 2 a.m. and 9 a.m. (Cf. *Brix* v. *City of San Rafael, supra,* 92 Cal.App.3d at p. 51, fn. 2.) If merely stating a laudable purpose were sufficient to justify a restriction on free expression, the government could justify closing picture arcades or other establishments at any hour of the day. Moreover, the police commissioner's report submitted by respondent states that portions of the ordinance that do not directly curtail First Amendment interests should by themselves reduce masturbation in picture arcades.[6] In addition, the government may require that a licensed manager be present to supervise the premises. (*People* v. *Perrine, supra,* 47 Cal.App.3d 252.) In short, the government has not shown that the closing-hours requirement is necessary or that it is the least restrictive means available to curb anticipated masturbation.

■ Appellant also contends that the closing-hours requirement is overbroad. An ordinance must be narrowly directed at the evil being attacked if First Amendment activity is involved. For example, an ordinance prohibiting all unauthorized use of sound amplifiers is invalid (*Saia* v. *New York* (1948) 334 U.S. 558, 562 [92 L.Ed. 1574, 1578, 68 S.Ct. 1148]), but a limitation on sound equipment emitting loud and raucous noises has been upheld. (*Kovacs* v. *Cooper, supra,* 336 U.S. 77.) Similarly, a prohibition on all house-to-house solicitation is overbroad (*Martin* v. *Struthers, supra,* 319 U.S. 141), but a statute was sustained which prohibited mailed solicitations to occupants who had advised that they found certain material offensive. (*Rowan* v. *Post Office Dept.* (1970) 397 U.S. 728 [25 L.Ed.2d 736, 90 S.Ct. 1484].)

---

[6]For example, the ordinance requires the interior of picture arcades to be visible upon entrance and prohibits enclosed or concealed booths. (§ 103.101, subd. (i).) The government may also prohibit an owner from knowingly allowing lewd conduct to occur. (See Pen. Code, § 11225.)

In the present case, the government assumes that because masturbation has occurred at some picture arcades in the past, it is necessary to restrict the hours of *all* such businesses in the future. The ordinance fails to regulate only those arcades that have been or are likely to be havens for masturbation. A bookstore with two motion picture machines, an arcade showing only old Mickey Mouse cartoons[7] and a peep show with fifty booths are all subject to the closing requirement. Under subdivision (g), no distinction is made for those picture arcades which provide a manager to supervise and patrol the premises or have well lighted booths open to public view. Such an undifferentiated approach is not sufficient to limit the right to free expression. (See *Tinker* v. *Des Moines School Dist.* (1969) 393 U.S. 503, 508 [21 L.Ed.2d 731, 738, 89 S.Ct. 733]; *Police Department of Chicago* v. *Mosley, supra,* 408 U.S. at p. 101 [33 L.Ed.2d at p. 220]; *Cohen* v. *California, supra,* 403 U.S. at p. 23 [29 L.Ed.2d at p. 292]; *EWAP, Inc.* v. *City of Los Angeles, supra,* 97 Cal.App.3d at p. 187; *People* ex rel. *Busch* v. *Projection Room Theater* (1976) 17 Cal.3d 42, 59 [130 Cal.Rptr. 328, 550 P.2d 600].)

In First Amendment jurisprudence, "[p]recision of regulation must be the touchstone...." (*N.A.A.C.P.* v. *Button, supra,* 371 U.S. at p. 438 [9 L.Ed.2d at p. 421]; *Interstate Circuit* v. *Dallas* (1968) 390 U.S. 676, 682 [20 L.Ed.2d 225, 230, 88 S.Ct. 1298]; *Burton* v. *Municipal Court, supra,* 68 Cal.2d at p. 691.) Since the Los Angeles city ordinance restricts all activity at all picture arcades, it fails this requirement. (Cf. *Erznoznik* v. *City of Jacksonville, supra,* 422 U.S. at p. 213 [45 L.Ed.2d at p. 133]; *Thornhill* v. *Alabama* (1940) 310 U.S. 88, 99 [84 L.Ed. 1093, 1100, 60 S.Ct. 736]; *Talley* v. *California* (1960) 362 U.S. 60, 64 [4 L.Ed.2d 559, 562, 80 S.Ct. 536]; *Carl* v. *City of Los Angeles* (1976) 61 Cal.App.3d 265, 273 [132 Cal.Rptr. 365].)

### III

Even if the First Amendment activity which the government seeks to regulate is of little value, the regulation must be necessary and it must focus narrowly on the abuse sought to be remedied. Subdivision (g) does not meet this crucial standard.

---

[7]A content-based ordinance limited to sexually explicit films might not be overbroad. However, that type of ordinance would raise other First Amendment issues. (See Stone, *Restrictions of Speech Because of its Content: The Peculiar Case of Subject-Matter Restrictions* (1978) 46 U.Chi.L.Rev. 81, 111-112.)

The judgment is reversed.[8]

Tobriner, J., Mosk, J., and Newman, J., concurred.

**RICHARDSON, J.**—I respectfully dissent for several reasons. The ordinance is presumed to be constitutional and defendant has failed to bear the burden of establishing its clear invalidity. The City Council of Los Angeles was presented with substantial evidence of police, health, and sanitation problems associated with the late night operation of picture arcades featuring "adult" entertainment. The ordinance is reasonably tailored to meet those problems, and does not impair in any legally significant way the protected constitutional rights of anyone. Accordingly, the subject ordinance should be sustained as a perfectly reasonable "*time*, place [and] manner" regulation similar to those which have been uniformly upheld by our own court within First Amendment contexts. (*Dillon* v. *Municipal Court* (1971) 4 Cal.3d 860, 869 [94 Cal.Rptr. 777, 484 P.2d 945].)

It first should be noted what the ordinance is not. It is not an attempt at censorship. The city is not seeking to control or regulate, directly or indirectly, the moving pictures which are being shown. It is apparent from the official hearings that the pictures exhibited in arcades in Los Angeles County are not "Mickey Mouse cartoons," or ballet portrayals, or travelogues, but movies which generate sexual excitement in patrons. Nevertheless, for 17 hours of every 24 defendant's commercial offering may be shown without any restraint whatever.

Furthermore, apart from the content of the pictures, it is doubtful that the ordinance even attempts to regulate conduct, whether sexual or lewd. In this case, as properly noted by Presiding Justice Files, speaking for the majority of the Court of Appeal, "The Los Angeles ordinance challenged here regulates business closing hours, not sexual activity. It is an exercise of the city's police power to reduce the incidence of conduct which is offensive, dangerous or unlawful under state law . . . . The purpose of the ordinance is not to regulate lewd conduct, but to regulate the operation of a picture arcade business so that its operation does not invite or encourage such violations of state law on its premises. This is a proper exercise of the city's police power."

---

[8]Because appellant's freedom of expression claim has merit, his equal protection and preemption arguments are not reached.

Unfortunately, I must be explicit in order to emphasize the reality of the police problem which prompted adoption of the ordinance in question. An investigative officer during official hearings described picture arcades operating in Los Angeles County as "money making machinery houses of masturbation," in which body and seminal fluids were excreted on walls, floors and patrons' clothing, causing odors and health, hygiene, sanitary, and police problems that were substantial and continuing. The ordinance was designed to lessen these physical effects by reducing the daily number of hours from 24 to 17 with the closure during the late hours of the night and early hours of the morning when presumably both patronage would be lowest, and available police supervision diminished. The time limitations are not unreasonably burdensome.

It has been accepted that picture arcades present a particular police problem which was well described in *People* v. *Perrine* (1975) 47 Cal. App.3d 252, 258 [120 Cal.Rptr. 640]:

"A picture arcade is a business, carried on in a place which the public generally is invited to enter and use. Since it is a place of entertainment, its patrons are not expected to enter with the solemnity of a business visitor at a mercantile establishment. Ordinarily those entering a picture arcade are seeking amusement, relaxation or excitement, possibly sexual stimulation or gratification, depending on the taste or mood of the individual and the kind of pictures exhibited. *Among such visitors it is foreseeable that some will be predisposed to conduct which is offensive, dangerous to others and even unlawful. The potential for misuse of the premises, for law violations, and for bodily harm to law-abiding patrons, is obvious, as is the concomitant need for continuous supervision.*" (Italics added.)

While free speech is a right, protected by both our federal and state Constitutions, we have said that it is not immune from reasonable regulation as to time, place, and manner if the regulation is clearly and narrowly drawn to further a legitimate purpose. (*Kash Enterprises, Inc.* v. *City of Los Angeles* (1977) 19 Cal.3d 294, 302-303 [138 Cal.Rptr. 53, 562 P.2d 1302]; *Welton* v. *City of Los Angeles* (1976) 18 Cal.3d 497, 504 [134 Cal.Rptr. 668, 556 P.2d 1119].)

The majority insists that "The operation of a picture arcade has been held to be an activity which is protected by the First Amendment."

(*Ante,* p. 846.) I fully agree. However, it is noteworthy that both authorities cited and relied on by the majority in support of the foregoing generality fully recognize that limitations on the *manner* of operation of picture arcades are entirely proper and in no way violative of First Amendment rights. Thus, the *Perrine* court reviewing this very ordinance upheld a provision which requires that the arcade "'shall have a responsible person on the premises to act as manager.'" (47 Cal.App.3d 252, 259.) Similarly, in *EWAP, Inc.* v. *City of Los Angeles* (1979) 97 Cal.App.3d 179, 189 [158 Cal.Rptr. 579], the court upheld, against a challenge that freedom of expression was infringed, another provision of this same ordinance which prohibited picture booths which are either partially or fully enclosed. This restriction was determined to be a valid exercise of the city's police power "to reasonably regulate and license arcades for purposes of health, safety and public welfare. [Citations.]" In short, notwithstanding the First Amendment claims asserted, California law is that a man's picture booth is not his castle. A *manner* regulation of another sort was sustained in *Antonello* v. *City of San Diego* (1971) 16 Cal.App.3d 161, 166 [93 Cal.Rptr. 820] (regulation of the internal construction of picture arcades).

Similar considerations should support the validity of reasonable *time* restrictions contained in the same ordinance. The same public interest identified in *Perrine* has equal application to the propriety of the brief closure hours herein presented. As previously noted the hours from 2 a.m. to 9 a.m. are a particularly appropriate subject for closure regulations. It is during the early morning hours that opportunities for lewd and disruptive conduct increase as available police supervision decreases.

Thus, assertion of the police power to control reasonably the *time* as well as the *manner* of arcade operation is supported by logic. It is also sustained by precedent. As we said in *Sunset Amusement Co.* v. *Board of Police Commissioners* (1972) 7 Cal.3d 64, 72 [101 Cal.Rptr. 768, 496 P.2d 840], "A municipality has broad power to enact 'all local, police, sanitary, and other ordinances and regulations not in conflict with general laws.' (Cal. Const., art. XI, § 7.) An ordinance so enacted will ordinarily be upheld if 'it is reasonably related to promoting the public health, safety, comfort, and welfare and if the means adopted to accomplish that promotion are reasonably appropriate to the purpose. [Citations.]'"

In harmony with the foregoing general principles California courts have had no difficulty in upholding the closure by ordinance of massage parlors between the hours of 10:30 p.m. and 7 a.m. (*Brix* v. *City of San Rafael* (1979) 92 Cal.App.3d 47, 51 [154 Cal.Rptr. 647], holding "The city council could reasonably conclude that because an increase in criminal activity occurs in commercial establishments during the late evening and early morning hours, a restriction prohibiting business operation after 10:30 p.m. would serve to reduce the risk of illegal activity.") Similarly, in *7978 Corporation* v. *Pitchess* (1974) 41 Cal. App.3d 42, 47 [115 Cal.Rptr. 746], in upholding a municipal ordinance prohibiting dancing at a public ballroom between the hours of 2 a.m. and 6 a.m., the appellate court observed, "The reasonableness of regulation under the police power is dependent upon the nature of the business being regulated and the degree of threat that the operation of such business presents to the tranquility, good order, and well-being of the community at large. So long as a 'patent relationship between the regulations and the protection of the public health, safety, morals, or general welfare' exists, the regulations will be considered reasonable. [Citations.]...With respect to the subject matter of the regulation here, i.e., closing hours, 'the right to regulate hours of closing of such business as public dance halls and similar public exhibitions at reasonable hours has long been recognized and is universally supported.' [Citation.]

"We cannot say that the closing hours imposed on plaintiffs' business are arbitrary or unreasonable. The county could justifiably conclude that public dancing and public entertainment 'at such late hours would tend to attract and congregate evilly disposed persons at hours when the [county] would be least prepared with police to guard against the acts of such persons.' [Citation.] The county could also conclude that during a portion of the 24-hour day the desires of those who seek to present public entertainment around the clock should yield to the wishes of those who seek peace and quiet in the small hours of the morning."

Doubtless for similar reasons the Legislature at the state level has by statute proscribed the sale of alcoholic beverages between 2 a.m. and 6 a.m. (Pen. Code, § 398.)

The ordinance before us fairly balances the conflicting interests, private and public. The regulatory hand over the protected First Amendment rights is very light indeed. In my view, under well established au-

thority, the ordinance is a valid exercise of a city's police power in imposing reasonable restrictions on the *time* of exercise of First Amendment rights. I would affirm the judgment.

Clark, J., and Manuel, J., concurred.