SHABO, J., Concurring and Dissenting.
Although I am in general accord with the majority’s disposition with regard to the issues of freedom of speech and statutory vagueness, I am compelled to dissent from the majority’s holding that Los Angeles Municipal Code section 103.101 (i) does not violate article I, section 1 of the California Constitution.
*Supp. 12 Article I, section 1 provides: “All people are by nature free and independent, and have inalienable rights. Among these are enjoying and defending life and liberty, acquiring, possessing, and protecting property, and pursuing and obtaining safety, happiness, and privacy.” In White v. Davis (1975) 13 Cal.3d 757 [120 Cal.Rptr. 94, 533 P.2d 222] and in City of Santa Barbara v. Adamson (1980) 27 Cal.3d 123 [164 Cal.Rptr. 539, 610 P.2d 436, 12 A.L.R.4th 219] the California Supreme Court broadly interpreted the language of article I, section 1 consistent with the provision’s underlying purpose of protecting “ ‘an enormously broad and diverse field of personal action and belief.’” (27 Cal.3d at p. 129; 13 Cal.3d at pp. 773-774.) Although in White, supra, 13 Cal.3d 757, the court noted that the focus of the privacy concern expressed in article I, section 1 related to “the accelerating encroachment on personal freedom and security caused by increased surveillance and data collection activity in contemporary society . . . [and that t]he new provision’s primary purpose is to afford individuals some measure of protection against this modern threat to personal privacy,” in Adamson the court invalidated on right of privacy grounds a zoning ordinance which had nothing at all to do with surveillance and data collection. In reaching its result the Adamson court quoted the following from White v. Davis, supra, 13 Cal.3d 757: “The court in White v. Davis quoted these words from ‘a statement drafted by the proponents of the provision [that added “privacy” to the California Constitution] and included in the state’s election brochure’ (13 Cal.3d at pp. 774-775): ‘ “The right of privacy is a right to be left alone. It is a fundamental and compelling interest. It protects our homes, our families, our thoughts, our emotions, our expressions, our personalities, our freedom of communion, and our freedom to associate with the people we choose . . . . [f] The right of privacy is an important American heritage and essential to the fundamental rights guaranteed by the First, Third, Fourth, Fifth and Ninth Amendments to the U.S. Constitution. This right should be abridged only when there is a compelling public need ....’” (Italics added.)” (27 Cal.3d at p. 130.)
The court in both White and Adamson, based upon ballot arguments in favor of adoption of article I, section 1, held that an incursion into the right of privacy “must be justified by a compelling interest.” (27 Cal.3d at p. 131; 13 Cal.3d at p. 775.) In light of the expansive interpretation afforded article I, section 1 by the California Supreme Court and that court’s insistence that a compelling interest be established in order to justify any incursion into the right of privacy, one must inquire what the interest of the City of Los Angeles is in requiring that movie arcade booths not be “partially or fully enclosed” nor “partially or fully concealed” and that the interior of arcade premises be “visible upon entering into such premises.” At the hearing on the demurrer the prosecution argued that the ordinance served the following purposes: First, the ordinance discouraged violations *Supp. 13 of state law, including masturbation, theft and assaults; second, the ordinance facilitated “ready ingress and egress” in case of emergency; third, the ordinance deterred conduct which, though not criminal, “certainly remains offensive and certainly may be offensive to other patrons . . .”; and fourth, the ordinance prevented a sanitary problem. In light of the fundamental nature of the right of privacy as broadly defined by our Supreme Court, I do not believe that any of these interests may properly be described as “compelling” in light of the ordinance’s obvious impact upon the privacy right of arcade patrons. In my view, the city’s legitimate concerns may properly be addressed through specific enforcement of the law against public masturbation and indecent exposure (Pen. Code, §§ 314, 647, subd. (a)) as well as the other penal laws designed to prevent theft, assaults and like crimes which may occur in enclosed arcade booths or arcade premises; the city’s safety interests can be better protected by providing building code requirements designed to ensure ready ingress and egress from arcade premises in case of emergency; the sanitary problem can be remedied by requiring management, as a condition of its license to operate motion picture arcades, to keep arcade booths in a clean and sanitary condition. Indeed, the city has not contended otherwise.
On this point I find persuasive the California Supreme Court’s decision in People v. Glaze (1980) 27 Cal.3d 841 [166 Cal.Rptr. 859, 614 P.2d 291]. In that case the court invalidated another subsection of the ordinance before this court which required the closing of movie arcades between 2 a.m. and 9 a.m. and prohibited customers and other visitors from being present during those hours even if the movie arcade machines were not being operated. The court held that the subsection involved more than the incidental infringement of freedom of expression and could be upheld only if the city were able to prove that the ordinance was “narrowly drawn and necessary to a legitimate governmental interest.” (27 Cal.3d at pp. 846-847.) As in the instant case, the city contended that the closing of picture arcades between the hours specified was a constitutional exercise of the city’s police powers because “the closing helps prevent masturbation during those hours when law enforcement problems are greatest.” The court rejected this argument and noted that, although this governmental purpose may be laudable, the means selected for its accomplishment “fail to meet the strict standards required by the Constitution. Rather than dealing directly with the objectionable conduct, the ordinance curtails the protected interests of persons engaged in First Amendment activity .... Arguably, crime in the streets could be reduced by prohibiting all persons from going out in public. However, when fundamental liberties are at stake, the test in a free society is whether there are ‘less drastic means’ available to accomplish the government’s purpose.” (Id., at p. 847.)
*Supp. 14 The court noted that the government may deal directly with persons who violate Penal Code section 647, subdivision (a) and observed that the city had conceded that this alternative would be less restrictive of First Amendment rights but argued that the closing-hours requirement was “necessary because of the limited number of police available during the early morning hours.” The court rejected that argument. Noting that the record failed to show “either that the criminal activity is particularly acute at picture arcades or that it is prevalent between the hours of 2 a.m. and 9 a.m., the court declared: “If merely stating a laudable purpose were sufficient to justify a restriction on free expression, the government could justify closing picture arcades or other establishments at any hour of the day . . . .” (Id., at p. 848.) The court emphasized that the government could establish valid alternatives to accomplish its purpose directly, including the requirement that a licensed manager be present to supervise the premises. The court then stated: “In short the government has not shown that the closing-hours requirement is necessary or that it is the least restrictive means available to curb anticipated masturbation.” (Ibid.)
Holding that the closing-hours requirement of the subsection was over-broad, the court rejected the city’s assumption that because “masturbation has occurred at some picture arcades in the past, it is necessary to restrict the hours of all such businesses in the future. ” People v. Glaze, supra, 27 Cal.3d at p. 849.) (Italics in original.) The court noted that the ordinance “fails to regulate only those arcades that have been or are likely to be havens for masturbation” and that “no distinction is made for those picture arcades which provide a manager to supervise and patrol the premises or have well lighted booths open to public view. Such an undifferentiated approach is not sufficient to limit the right of free expression.” Finally, the court observed: “Even if the First Amendment activity which the government seeks to regulate is of little value, the regulation must be necessary and it must focus narrowly on the abuse sought to be remedied.” (Ibid.)
My reading of People v. Glaze, supra, leads me to conclude that, just as the closing-hours requirement deprived all persons of their right to exercise their First Amendment rights without sufficient justification, so the subsection before us curtails every citizen’s right of privacy in exercising their First Amendment right to view motion pictures exhibited in motion picture arcades by means of an ordinance which fails to provide less drastic available means to accomplish the governmental purposes ostensibly underlying section 103.101 (i). By requiring patrons of arcades to be observable from the point of entry of the arcade and to require that patrons view such motion pictures in public, or not at all, the subsection not only chills the exercise of First Amendment rights but provides a means for surveillance and data collection which article I, section 1 was specifically intended to prevent. In *Supp. 15 view of the fundamental nature of the right at stake, I would hold that section 103.101(i) of the Los Angeles Municipal Code is overly broad and therefore impermissibly violates the right of privacy under article I, section 1 of the California Constitution.
Petitions for a rehearing were denied January 8, 1985. Shabo, J., was of the opinion that the petitions should be granted.