[Civ. No. 39270. Second Dist., Div. One. Feb. 2, 1972.]

VINOT ENTERPRISES, INC., Petitioner, v.
CITY OF PASADENA et al., Respondents.

[Civ. No. 39570. Second Dist., Div. One. Feb. 2, 1972.]

LEO BARBARICK, Petitioner, v.
THE MUNICIPAL COURT FOR THE PASADENA JUDICIAL
DISTRICT OF LOS ANGELES COUNTY, Respondent;
THE PEOPLE, Real Party in Interest.

(Consolidated Cases.)

**COUNSEL**

Hecht, Diamond & Freis, Roger Jon Diamond and Virgil V. Becker for Petitioners.

Wendell R. Thompson, City Attorney, Evelynn M. Finn, Assistant City Attorney, Suzanne B. Gifford and James O. Kahan, Deputy City Attorneys, for Respondents and for Real Party in Interest.

**OPINION**

**THOMPSON, J.**—Petitioner Vinot Enterprises, Inc. (Vinot) seeks a peremptory writ of mandate "restraining" the City of Pasadena (City) from "operation and execution of its decision [denying an entertainment permit to Vinot]" and "absolutely and forever restrain[ing] [the City] from taking any further proceedings against, or making any other orders affecting petitioner [Vinot]." Having initially determined that Vinot had not made an adequate showing in its petition that the City's denial of an entertainment permit was improperly founded upon Vinot's failure to comply with the requirements of the City ordinance requiring a specified amount of customer parking and because of procedural defects in the petition, we summarily denied an alternative writ. Acting upon a petition for hearing alleging a denial of a permit upon grounds proscribed by the First Amendment, our Supreme Court granted hearing and retransferred the matter to us directing that we issue an alternative writ. We did so.

Petitioner Leo Barbarick (Barbarick) is the controlling stockholder and managing director of Vinot. He seeks alternative and peremptory writs of prohibition restraining the Municipal Court of the Pasadena Judicial District from proceeding further in criminal actions pending against him for operating the business of Vinot without an entertainment permit in violation of Pasadena City Ordinance No. 5018.

We conclude that Vinot has not established its right to a writ of mandate and that Barbarick's petition fails to allege facts justifying us in assuming jurisdiction by way of extraordinary writ.

For several years Vinot has operated a bar in the City known as the Hi-Life presenting "topless-bottomless entertainment." Ordinance No. 5018 of the City provides that premises offering entertainment may not be operated unless a permit is obtained in the manner required by the ordi-

nance. Section 6.00 states that a permit shall be granted if, upon application, the city manager finds: the application has been completed and filed as required; the operation of the applicant will be carried on in a building which complies with all applicable health, zoning, fire, and building and safety requirements; "the applicant, his employee, agent or any person connected or associated with applicant as a partner, director, officer, stockholder, associate or manager" has not been convicted of or within the previous five years committed an offense involving the presentation of a lewd exhibition, performance or motion picture, or an offense involving lewd conduct, the use of force or violence, misconduct with children, or maintenance of a nuisance; the business has not been a public nuisance within the last five years; the applicant has not knowingly made false statements in an application for a permit; the applicant has not permitted "acts of sexual misconduct to be committed within prior business operations"; and "the applicant has not had a similar permit previously revoked for good cause within the past year unless the applicant has shown a material change in circumstances since the date of revocation." An existing permit can be revoked for essentially the same reasons as justify refusal of a permit.

Vinot applied for an entertainment permit pursuant to a predecessor ordinance to Ordinance No. 5018. The application was denied by the city manager on December 30, 1970, on three grounds: (1) violation of fire regulations in the operation and maintenance of a bar; (2) violation of the Pasadena Building Code requirement of 23 parking places for the establishment which in fact had only 6; and (3) 10 convictions for conduct violating Penal Code section 314, subdivision 1, (indecent exposure) and section 647, subdivision (a) (permitting indecent exposure) occurring on the premises. Counsel for Vinot replied to the denial on February 18, claiming that the parking requirement was "ex post facto." The reply also states that if the City "wishes to enforce parking regulations which apparently are enforced elsewhere in the city" Vinot will either "acquire additional parking available near his [sic] place of business or cut down on the useable space available on the interior of the establishment to conform to the parking available to him [sic]." The application was refiled under Ordinance No. 5018 after it was adopted and was again denied by the city manager for essentially the same reasons.

Vinot pursued its administrative remedies, seeking to overturn the denial of its application by the city manager. At no time did it move to acquire additional parking or to reduce the interior useable space of the Hi-Life.

The administrative hearing was held on August 25, 1971. After hearing testimony and receiving documentary evidence, the hearing officer found that Vinot's occupancy of the Hi-Life was in violation of the Pasadena zoning ordinance because only 6 parking spaces were provided while 23

were required, and that 14 instances of violations of Penal Code sections 314, subdivision 1 and 314, subdivision 2 occurring on the premises had resulted in final convictions. He recommended denial of the permit by reason of the zoning violation and the pattern of violation of the Penal Code provisions. The hearing officer's report was accepted by the City and the application of permit denied.

Vinot filed an action in the superior court pursuant to Code of Civil Procedure section 1094.5 to review the administrative determination. That court denied a peremptory writ of mandate on October 22, 1971. In this proceeding, we do not deal with an appeal from that judgment but with related issues raised on Vinot's application for extraordinary writ.[1]

Although Vinot was denied a permit, Barbarick, as its managing officer, continued to present entertainment. Criminal charges alleging violation of the City's ordinance by presenting entertainment without a permit have resulted in five separate cases now pending against Barbarick in the Pasadena Municipal Court. Barbarick seeks to restrain further proceedings in those cases.

### Denial of Permit

Vinot contends that the action of the City in refusing its application for an entertainment permit is: (1) erroneous as a matter of law, and (2) such an intrusion upon First Amendment freedoms as to require that it be reviewed by an original proceedings in this court rather than on appeal from the judgment in the 1094.5 administrative mandamus action in the superior court. Those contentions are bottomed on an exclusive focus upon the portions of the pertinent ordinance authorizing the denial of an entertainment permit by reason of conviction of sexual-type offenses committed on the premises for which the permit is sought or the commission of such offenses.

Vinot concedes, however, that at no time material to the matter at bench was it in compliance with the requirement of the pertinent ordinance that it conform to the zoning rules of the City with respect to available parking. It has presented no evidence to us that it will be able to comply. Those facts are fatal to its position that this court, in a special proceeding, must compel respondent City to issue the entertainment permit sought by Vinot.

In the proceeding at bench, Vinot may complain of a defect in the administrative proceeding with respect to its permit application only

---

[1]By letter to this court, Vinot's counsel indicates that no appeal was perfected from the judgment of the superior court. While that judgment is thus now final and conclusively determines the correctness of the administrative action denying a permit to Vinot, respondent has not argued res judicata. For that reason, we approach the matter on the merits.

if it was prejudiced by the defect. Absent a showing that it would be entitled to the permit sought, it cannot compel the issuance of a permit because a ground of denial contained in the ordinance may be invalid unless the alleged invalidity vitiates the ground for denial concededly present.

On the record before us, Vinot's failure to comply with the City's zoning requirement with respect to parking is a valid basis for denial of the permit sought by it. (See *Burton* v. *Municipal Court,* 68 Cal.2d 684, 689-690 [68 Cal.Rptr. 721, 441 P.2d 281].) The requirement of compliance with zoning is, by the terms of the ordinance and by the operation of an express severability clause, severable from other grounds for denial of an entertainment permit. We cannot, on the limited record in this extraordinary proceeding, conclude that other requirements for issuance of a permit, if invalid, have operated in a fashion which vitiates the valid requirement.

■ Vinot contends that the parking requirement is but a subterfuge used by the City to deny an entertainment permit to a controversial enterprise. The record before us does not support that conclusion. Vinot argues that an improper purpose of the City must be inferred from the "unpopular" nature of Vinot's activity. That argument is without merit. We recognize that by high court decision commercial exploitation of sexual activity is sometimes not a sin in the eyes of the law. (See e.g., *Barrows* v. *Municipal Court,* 1 Cal.3d 821 [83 Cal.Rptr. 819, 464 P.2d 483].) But it is no great honor, either. (See *Ginzburg* v. *United States,* 383 U.S. 463 [16 L.Ed.2d 31, 86 S.Ct. 942].) The fact that one engages in appeal to prurient interest for financial gain does not entitle that person to preferential treatment. Thus, while the issue of the use of the zoning requirement as a pretext for denial of a permit may have been properly litigated before the superior court in the action in administrative mandamus and the propriety of that court's resolution of the issue may be tested on an appeal from its judgment, the mere nature of Vinot's activity is not such as to permit us to infer in this special proceeding that the City acted improperly.

We recognize also that in some situations of impairment of First Amendment rights the public interest in freedom of communication dictates that conventional judicial procedures be abandoned in favor of a quick decision. Such is not the case here. Delay in the ultimate resolution of Vinot's right to an entertainment permit is largely self-imposed by Vinot's failure to make concededly necessary parking arrangements. The impact of that delay is almost exclusively economic in its adverse effects

upon Vinot's sales of drinks. Its impact upon First Amendment freedom of expression through delay in the public's right to view topless-bottomless entertainment at the Hi-Life is minimal at best. Thus, we conclude that in the case at bench we must apply normal standards of appellate action rather than those used in situations involving serious potential impingement on First Amendment rights. Those standards require that Vinot's rights be determined in an appeal from the judgment of the superior court rather than in this special proceeding. (Cf. *Burton* v. *Municipal Court, supra,* 68 Cal.2d 684, 689-690, contrasting classification in economic vis-à-vis First Amendment rights.)

### Prohibition

Barbarick's petition for an alternative writ of prohibition against prosecution for violation of the provisions of Ordinance No. 5018 proscribing the presentation of entertainment without a permit stands upon a different ground. Since a prosecution for operation without a license or permit calls into question all provisions of the governing statute or ordinance which must be met in order to secure the license or permit (*In re Porterfield,* 28 Cal.2d 91 [168 P.2d 706, 167 A.L.R. 675]), that petition requires consideration of the constitutional validity of all requirements of Ordinance No. 5018 if the petition is procedurally sufficient. Our examination of the petition for alternative writ discloses, however, that it is fatally defective procedurally.

In essence, Barbarick's petition for alternative writ of prohibition alleges that he is being prosecuted in five cases now pending in the Municipal Court of the Pasadena Judicial District for operating without an entertainment permit, and that his demurrers to the complaints filed in those actions have been overruled in the trial court. The petition admits that no relief has been sought in the superior court. It seeks to justify action by this court on the theory that: (1) the petition for writ of prohibition is so related to the proceeding in mandamus as to compel the issuance of a permit by this court; and (2) special circumstances in the nature of infringement of First Amendment rights require immediate special treatment.

Neither of the bases for our assuming jurisdiction here argued by Barbarick has validity. Vinot's petition for a writ of mandamus is fatally insufficient because of Vinot's failure to provide requisite parking. That petition cannot be used to bootstrap action in this court in a related proceeding. The latter litigation must stand or fall on its own merits. So viewed, Barbarick's petition must be rejected as an unmeritorious effort to avoid the

processes of review of action by the municipal court. The normal procedure for that review is a proceeding in the superior court. (See e.g., Pen. Code, § 1466 et seq.) While special circumstances may justify review of action of a municipal court by way of extraordinary writ in the Court of Appeal or the Supreme Court, the superior court should not be bypassed lightly. We find no facts alleged in Barbarick's petition for writ of prohibition that require that the orderly process of review be abandoned.

Barbarick rests his argument that we should assume extraordinary jurisdiction upon the decisions of our Supreme Court in *Baker* v. *Municipal Court*, 5 Cal.3d 669 [97 Cal.Rptr. 328, 488 P.2d 656], and *Barrows* v. *Municipal Court, supra,* 1 Cal.3d 821. Thus, he argues that in *Baker* our Supreme Court assumed original jurisdiction to restrain prosecution for violation of a city ordinance proscribing operation of a book store without a license. He follows that argument with the contention that since sexually oriented entertainment is entitled to constitutional protection by *Barrows,* the *Baker* approach should be followed here. The argument misconceives the holding in *Barrows.* While *Barrows,* interpreting Penal Code section 647, subdivision (a), holds that section 647's definition of disorderly conduct was not intended by the Legislature to cover conduct in the course of a theatrical performance, it does not declare that sex before a paying audience is a constitutionally protected spectator sport. The pertinent portion of *Barrows* declares a rule of statutory construction, but no rule of constitutional law which states that conduct is to be treated identically with pure speech. Authority dealing with that specific issue is contrary to Barbarick's contention. (*Cox* v. *Louisiana,* 379 U.S. 559 [13 L.Ed.2d 487, 85 S.Ct. 476], picketing; *United States* v. *O'Brien,* 391 U.S. 367 [20 L.Ed.2d 672, 88 S.Ct. 1673], act "symbolic" of speech.)

The matter at bench is of a greatly different character than those before our Supreme Court in *Baker* and the related decision in *Perrine* v. *Municipal Court,* 5 Cal.3d 656 [97 Cal.Rptr. 320, 488 P.2d 648]. ▪ *Baker* and *Perrine* deal with the validity of local ordinances licensing book stores and thus affecting activity of pure speech, the dissemination of expressions of thought. There is a vital public interest in freedom from inhibition of pure expression. That public interest requires speedy resolution of legal disputes to determine whether a purported inhibition comports with the narrow area of constitutionally permissible regulation. It mandates that, in some circumstances, the person disseminating the pure expression be free of prosecution for operating without a license to do so pending determination of the validity of requirements for a

license. ▓▓▓ Barbarick's activity is not, however, pure speech. By definition, he seeks protection for conduct, the presentation of entertainment. On the record, that presentation is a commercial one accompanied inextricably with the sale of alcoholic beverages. Communication of thought, if it occurs, is secondary and incidental. There is thus not the same public interest in speedy resolution of the dispute here that is present in *Baker* and *Perrine;* nor is there the public interest in permitting freedom from prosecution pending resolution of the validity of denial of a permit to Vinot.[2] *Baker* and *Perrine* proceed in the absence of empirical evidence that unregulated operation of book stores can cause public harm. In contrast, experience has shown that the combination of the sale of liquor and the presentation of entertainment can cause a variety of local problems requiring regulation in the public interest.

We thus conclude that the incidental nature of communication and the need for public regulation inherent in the matter at bench distinguish it from the situation before the Supreme Court in *Baker* and *Perrine.* While in those cases our Supreme Court concluded that the need for speedy resolution of the controversy outweighed the greater accuracy of result incident to the normal judicial process, such a conclusion is not dictated here. We are required to determine whether the special circumstances of the matter at bench justify an original proceeding in this court rather than a special proceeding in the superior court or review on appeal of the conviction of Barbarick, if he is found guilty. So tested, the allegations of Barbarick's petition for an alternative writ of prohibition issuing from this court are insufficient.

There is an inevitable deterioration of the judicial process that results when the Court of Appeal undertakes to become a finder of fact or otherwise acts without the benefit of the findings and judgment of tribunals nominally lesser in the judicial hierarchy but in fact more skilled in deciding controversies flowing to them in due course. Procedures which permit us to act without the benefit of lower court decision encourage the substitution of our own concepts of what is right for the rule of law and the dignity of a factual record. The public interest in immediate decision of Barbarick's cause is not so great that we should accept those disadvantages.

## Disposition

Vinot's petition for peremptory writ of mandate is denied, and the

---

[2]Vinot has not sought a writ of supersedeas on the theory that the trial court's action is in essence a revocation of its permit.

alternative writ of mandate is discharged. Barbarick's petition for alternative writ of prohibition is denied.

Wood, P. J., and Clark, J., concurred.

A petition for a rehearing was denied March 2, 1972, and the opinion was modified to read as printed above. Petitioner's application for a hearing by the Supreme Court in No. 39270 was denied March 30, 1972.