[Civ. No. 61142. Second Dist., Div. One. July 31, 1981.]

JOHN DeMOTT et al., Plaintiffs and Respondents, v.
BOARD OF POLICE COMMISSIONERS OF THE CITY OF
LOS ANGELES et al., Defendants and Appellants.

COUNSEL

Burt Pines and Ira Reiner, City Attorneys, Frederick N. Merkin, Senior Assistant City Attorney, and Leslie E. Brown, Deputy City Attorney, for Defendants and Appellants.

David M. Brown, G. Randall Garrou and Brown, Weston & Sarno for Plaintiffs and Respondents.

OPINION

WADDINGTON, J.*—Appellants, Los Angeles Board of Police Commissioners, Los Angeles Police Department and Los Angeles City Attorney, appeal from an injunction granted in favor of respondents John DeMott, Stephen Footlik, Le Sex Shoppe Private Film Club, an unincorporated association and EWAP, Inc., a California Corporation. The order prevents enforcement of a city ordinance regulating the use of picture arcades operated by respondent at several locations. The order is appealable; Code of Civil Procedure section 904.1; *Capitol Records Inc.* v. *Erickson* (1969) 2 Cal.App.3d 526 [82 Cal.Rptr. 798, 40 A.L.R.3d 553].

Respondent EWAP is a California corporation which owns and operates retail book stores at various locations. A portion of the premises is leased to respondent Footlik, who operates picture arcades. Both respondents are licensed to operate these picture arcades by the board of police commissioners. In January 1980, city police officers informed employees of respondent EWAP they would commence enforcement of Los Angeles Municipal Code section 103.101, subdivision (i) unless the

---

*Assigned by the Chairperson of the Judicial Council.

arcade premises were brought into compliance with the requirement that the interior of the booths which comprised the picture arcade were visible and unenclosed.[1] Shortly thereafter, respondents formed a voluntary unincorporated association which adopted articles of association and bylaws. The association bylaws recite that the physical facilities on the premises of respondents, i.e., the "picture arcade" were owned by the new private association; that membership in the association would be required as a condition for viewing films in the picture arcade. To enroll as a member, one must pay a $1 fee to the clerk in the book store, identify oneself, furnish proof of age and subscribe to the basic philosophy of the association.

The picture arcades described above are fully enclosed booths. Admittance is gained upon display of club membership, payment of $1 fee, deposit of a coin activating the film and signing the statement of philosophy. The trial court concluded that respondents were not required to comply with the ordinance requiring unenclosed booths because their facilities were not offered to the public. Enforcement of the ordinance was enjoined.

Appellants contend the trial court erred by failing to apply the proper legal standard for issuance of injunctions, thereby abusing its discretion.

## I

■ The general rule applicable to complaints seeking injunctive relief is stated in *Continental Baking Co.* v. *Katz* (1968) 68 Cal.2d 512, 528 [67 Cal.Rptr. 761, 439 P.2d 889]: "The general purpose of such an injunction is the preservation of the status quo until a final determination of the merits of the action. [Citations.] Thus, the court examines all of the material before it in order to consider 'whether a greater injury will result to the defendant from granting the injunction than to the plaintiff from refusing it; . . .' [Citations.] In making that determination the court will consider the probability of the plaintiff's ultimately prevailing in the case and, it has been said, will deny a preliminary injunction unless there is a reasonable probability that plaintiff will be successful in the assertion of his rights. [Citations.]" (See also *People* v. *Adult World Bookstore* (1980) 108 Cal.App.3d 404, 408 [166 Cal.

---

[1]Subdivision (i) of section 103.101 requires that "the entire interior of such premises wherein the pictures are viewed [be] visible upon entrance to such premises" and prohibits booths which are "partially or fully enclosed . . . or . . . concealed."

Rptr. 519].) The trial court, therefore, must decide which party will be injured more by an adverse ruling on an application for a preliminary injunction. That decision, however, "'rests in the sound discretion of the trial court, and . . . may not be interfered with on appeal, except for an abuse of discretion.'" (*Continental Baking Co.* v. *Katz, supra,* 68 Cal.2d at p. 527.) Such abuse of discretion must be clearly shown. (*People* v. *Columbia Research Corp.* (1977) 71 Cal.App.3d 607 [139 Cal.Rptr. 517], cert. den., 434 U.S. 904 [54 L.Ed.2d 191, 98 S.Ct. 302].) We conclude that appellants have established the required showing.

The use of injunctions to forestall criminal prosecution has evolved from its initial purpose as an equitable remedy in tort and contract actions. Historically, the injunction served the interests of those who sought immediate judicial intervention against threatened injury. (2 Witkin, Cal. Procedure (2d ed. 1970) Provisional Remedies, § 76.) In more recent times, the injunctive process is invoked to abort threatened prosecution of criminal law, typically a law with First Amendment overtones.[2] This is true despite the language of Code of Civil Procedure section 526, which forbids issuance of an injunction to prevent the execution of a public statute by an officer of the law for the public benefit. In the *City of Santa Monica* v. *Superior Court* (1964) 231 Cal. App.2d 223, 226 [41 Cal.Rptr. 824], the court said: "However, we regard it as beyond question that trial courts should be extremely cautious, and even hesitant and reluctant, when asked to enjoin law enforcement officials from enforcing an ordinance obviously approved and adopted by duly elected representatives of the people for the purpose of promoting and protecting public morality prior to a trial on the merits. With all presumptions favoring the validity and constitutionality of the enactments of various legislative bodies, it should be only under extraordinary circumstances that anyone challenging the validity of such a law should immediately be granted the ultimate relief he seeks prior to any trial on the merits." (See, also *7978 Corporation* v. *Pitchess* (1974) 41 Cal.App.3d 42, 46 [115 Cal.Rptr. 746].)

Despite this cautionary signal, other courts have more readily invoked the injunctive remedy. (*Startrack, Inc.* v. *County of Los Angeles* (1976) 65 Cal.App.3d 453 [135 Cal.Rptr. 283]; *Renba Lil* v. *Kortz* (1976) 65 Cal.App.3d 467 [135 Cal.Rptr. 287].) Inconsistent results probably occur because the appellate court must review the trial court's decision to

---

[2]"Congress shall make no law . . . abridging the freedom of speech . . ." (U.S. Const., Amend. I.)

determine which side would probably prevail on the merits of the case and which side would suffer injury. When the trial court invokes its discretion in resolving this issue, the appellate court is limited in its determination to whether the court abused its discretion. If the record supports the decision of the trial court, this court should affirm.

In the instant case, however, the trial court was partially limited in exercising its discretionary power by a previous appellate decision directly construing the questioned ordinance. In *EWAP, Inc.* v. *City of Los Angeles* (1979) 97 Cal.App.3d 179, 189 [158 Cal.Rptr. 579], the court said: "It is undisputed that content-neutral reasonable regulations of the time, place and manner of protected speech are permitted by the First Amendment where such regulations are necessary to further significant governmental interests. (See *Young* v. *American Mini Theatres* (1976) 427 U.S. 50, 63, fn. 18 and 84 [49 L.Ed.2d 310, 322, 334, 96 S.Ct. 2440].) . . . '[This] regulation is sufficiently justified if it is within the constitutional power of the Government; if it furthers an important or substantial governmental interest; if the governmental interest is unrelated to the suppression of free expression; and if the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest.' (*United States* v. *O'Brien* (1968) 391 U.S. 367, 377 [20 L.Ed.2d 672, 680, 88 S.Ct. 1673].) The prohibition of enclosed or concealed booths in picture arcades easily passes this test. The city has the constitutional power to reasonably regulate and license arcades for purposes of health, safety and public welfare." (*Antonello* v. *City of San Diego* (1971) 16 Cal.App.3d 161, 166 [93 Cal.Rptr. 820]; see also *Burton* v. *Municipal Court* (1968) 68 Cal.2d 684 [68 Cal.Rptr. 721, 441 P.2d 281].)

As was stated in *People* v. *Perrine* (1975) 47 Cal.App.3d 252, 258 [120 Cal.Rptr. 640]: "A picture arcade is a business, carried on in a place which the public generally is invited to enter and use. Since it is a place of entertainment, its patrons are not expected to enter with the solemnity of a business visitor at a mercantile establishment. Ordinarily those entering a picture arcade are seeking amusement, relaxation or excitement, possibly sexual stimulation or gratification, depending on the taste or mood of the individual and the kind of pictures exhibited. Among such visitors it is foreseeable that some will be predisposed to conduct which is offensive, dangerous to others and even unlawful. The potential for misuse of the premises, for law violations, and for bodily harm to law-abiding patrons, is obvious, as is the concomitant need for [deterring such conduct]."

The court in *EWAP* upheld the validity of the ordinance in question here stating: "The city has a substantial interest in preventing the kind of dangerous or unlawful conduct, as well as the health and safety problems, which may be anticipated in a picture arcade where the booths are concealed or enclosed. The prohibition of such booths furthers the city's interest in deterring and detecting the use of the premises for such unlawful activity."[3] (*EWAP, Inc. v.. City of Los Angeles, supra*, 97 Cal.App.3d at p. 190.)

In determining whether to issue the injunction against enforcement of the ordinance, the trial court was bound by the *EWAP* decision which approved the facial validity of the ordinance. To avoid the express holding of *EWAP*, respondents argued to the trial court, and to this court, that despite the facial validity of the ordinance, the ordinance threatens First Amendment rights as applied to their picture arcade operation. (*Crownover v. Musick* (1973) 9 Cal.3d 405 [107 Cal.Rptr. 681, 509 P.2d 497].) ■ Indeed, operation of a picture arcade is an activity protected by the First Amendment. (*People v. Glaze, supra*, 27 Cal.3d 841, 846.) When issues of First Amendment import are involved in this context, California courts have also acknowledged the legitimacy of injunctive relief to avoid the potential for censorship from threatened prosecution. (*Zeitlin v. Arnebergh* (1963) 59 Cal.2d 901 [31 Cal.Rptr. 800, 383 P.2d 152, 10 A.L.R.3d 707].) But the ordinance in question does not attempt to restrict expression of ideas either expressly or by implication. Unlike other questioned forms of free speech, this ordinance is content-neutral. (*Young v. American Mini Theatres* (1976) 427 U.S. 50, 63 [49 L.Ed.2d 310, 321-322, 96 S.Ct. 2440].) No restriction is imposed upon access to the arcade, nor the content of the film. The ordinance merely requires conformity to its provisions for a visible interior. Since *EWAP* has already approved this ordinance as a legitimate exercise of police power, the ordinance as applied to respondents' business is unobjectionable.

Even if respondents are engaged in activity protected by the First Amendment, they are not "immune to regulations which do not impair his exercise of his constitutionally protected rights [citation]." (*People v. Perrine, supra*, 47 Cal.App.3d 252, 257.)

---

[3]In *People v. Glaze* (1980) 27 Cal.3d 841, 848, footnote 6 [166 Cal.Rptr. 859, 614 P.2d 291], the Supreme Court impliedly approved the validity of the identical ordinance in question here.

Respondents contend irreparable injury will occur if threatened prosecution of their employees is not enjoined. If the ordinance were facially invalid, or invalid as applied, that argument would be meritorious. Because neither ground is tenable, this contention lacks merit. As was said in *Austin* v. *Municipal Court* (1979) 89 Cal.App.3d 269, 272 [152 Cal.Rptr. 400]: "A vice of the procedure attempted in this case is that misdemeanor charges, which should be tried in the municipal court subject to a review by the appellate department of the superior court, are removed to the superior court for trial in a civil proceeding with appellate review by the Court of Appeal and by petition to the Supreme Court. Such a dislocation of the case load may be justified under extraordinary circumstances, ... but is not an option routinely available to any alleged misdemeanant who would like to by-pass a trial in the municipal court. (See *Vinot Enterprises, Inc.* v. *City of Pasadena* (1972) 23 Cal.App.3d 246 [100 Cal.Rptr. 217]; *Scherr* v. *Municipal Court* (1971) 15 Cal.App.3d 930, 933 [93 Cal.Rptr. 556]; *Pitchess* v. *Superior Court* (1969) 2 Cal.App.3d 644, 648 [83 Cal.Rptr. 41]; *Manchel* v. *County of Los Angeles* (1966) 245 Cal.App.2d 501 [54 Cal.Rptr. 53].)"

## II

■ Respondents contend the ordinance in question does not apply to the picture arcade portion of the premises because the public is not admitted. Section 103.101, subdivision (a) states: "As used in this article, 'picture arcades' shall mean *any place to which the public is admitted* ...." In their complaint, respondents allege they have converted the picture arcade into an unincorporated association for private film viewing from which the public is excluded. According to the declarations attached to the complaint, the unincorporated association has adopted articles of association and bylaws; requires prospective applicants to sign membership applications which include acknowledgement of and subscription to the goals of the association;[4] requires display of proper identification before being admitted to the arcade; imposes a $1 cost on membership. Absent compliance with these provisions, no one is admitted to the picture arcade premises. According to respondents, these indicia of membership evidence the private nature of the picture arcades which excludes it from the provisions of the ordinance.

---

[4]Bylaw 2, entitled "STATEMENT OF PHILOSOPHY," reads as follows: "This association is expressly formed as a private organization which is not open to the general public.

"A. PURPOSE. The purpose of the association is to permit persons of like tempera-

The trial court apparently imposed the burden of disproving the private character of the arcade upon appellants. While establishing a negative obviously imposes logical difficulties, the more appropriate characterization would have been to require appellants to establish that the arcade was in fact a place "to which the public was admitted." To that issue, respondents submitted declarations of clerical personnel who explained membership policies and had approved membership applications. Appellants offered a counterdeclaration of a police officer attempting to establish that membership was not required and admittance to the arcade was randomly and ineffectively enforced. Respondents filed additional declarations denying, in effect, that assertion.

Whether a particular location is a place "to which the public is admitted" depends upon the facts of the individual cases. (*People* v. *Belanger* (1966) 243 Cal.App.2d 654 [52 Cal.Rptr. 660] [construing Pen. Code, § 647, subdivision (f)].) Although the bookstore is privately owned, the premises can still be characterized as a "public place." (I.e., common to all or many; general; open to common use.) (*In re Zorn* (1963) 59 Cal.2d 650 [30 Cal.Rptr. 811, 381 P.2d 635] [barber shop is a public place]; *People* v. *Olson* (1971) 18 Cal.App.3d 592 [96 Cal. Rptr. 132] [area outside private home]; *People* v. *Perez* (1976) 64 Cal.App.3d 297 [134 Cal.Rptr. 338] [hallway of an apartment building].) According to respondents, the picture arcade is part of the premises leased by the bookstore. Access to the picture arcade, i.e., film viewing booths, is controlled by an employee of the bookstore; admittance to the booth is obtained from bookstore personnel when provided membership application, request identification and collect money from applicants. From the complaint and attached declarations, it is obvious that there is a close business relationship between the bookstore and the arcade. The film booths are on premises leased by the bookstore; bookstore clerks approve and authorize membership requests; clerks control access to the booth. In fact, absent the facilities and personnel of the

---

ment who are interested in viewing erotic films to view such films in a congenial atmosphere from which the public is excluded, in order to preserve the privacy and anonymity of the viewer. This association is formed in recognition of the lamentable fact that in this society at large, those individuals who may choose to view erotic films for their pleasure and edification are often publicly stigmatized and castigated. In order to safeguard the right of its members to view films of their choice, this association from its inception shall be private and shall only admit as members those individuals who share a similar philosophy and desire to maintain their privacy.

"B. NO PUBLIC SOLICITATION OF MEMBERSHIP. In order to safeguard the privacy and anonymity of the members of the association, the association hereby pledges that there shall be no public membership solicitation engaged in by the association."

bookstore, the film booths cannot be used. The complete dependence of the arcade upon the bookstore operation belies any claim to an independent operation. The relationship between the two entities is pervasive. Because the bookstore is obviously open to the public, the arcade is merely its appendage and similarly qualifies as a "public place."

The ordinance in question, however, does not refer to a "public place," rather the language applies to picture arcades "to which the public is admitted." Respondents contend the public is excluded from access to the picture arcade and admittance is conditioned upon membership in a private film club,[5] i.e., an unincorporated association. Despite the nexus between the bookstore and picture arcade, respondents argue that the picture arcade is private and not a "place to which the public is admitted." This argument presumes that the members of the club constitute a legitimate "association" within the meaning of the law.

The law of unincorporated association is sparse.[6] In most recorded cases, the term has been construed in the context of litigation determining property rights of members, (*Scott* v. *Donahue* (1928) 93 Cal.App. 126 [269 P. 455]) resolving tax issues (*Kindelan* v. *United States* (S.D.Fla. 1964) 233 F.Supp. 557) or determining membership under civil rights laws. (*United States* v. *Richberg* (5th Cir. 1968) 398 F.2d 523; *Mills* v. *Fox* (E.D.N.Y. 1976) 421 F.Supp. 519.) None of these cases are dispositive in the context of this case. In an early California case, *Law* v. *Crist* (1940) 41 Cal.App.2d 862, 865 [107 P.2d 953], the court said: "'The usual meaning of the term "association" is an "unincorporated organization composed of a body of men partaking in general form and mode of procedure of the characteristics of a corporation."'" Corporate resemblance is relevant but not conclusive; *Scott* v. *Donahue, supra*, 93 Cal.App. 126.

Nevertheless, certain general guidelines outlining the contours of an association can be gleaned from decisional law: (1) Evidence that indi-

---

[5]According to a declaration filed by appellant, the membership fee can be exchanged for coins suitable for deposit in the coin operated film booth.

[6]Unless a nonprofit corporation is involved; Corporations Code section 21000 et seq. No such allegation is recited in the complaint. The Corporation Code does not define an unincorporated association for profit and merely declares that membership interests therein are personal property. (Corp. Code, § 20000.) The code also authorizes an unincorporated association to acquire various legal or equitable interests in real property. (Corp. Code, § 20000.)

viduals have drafted and adopted articles of association and by-laws is not dispositive. (*Carpenter* v. *Zoning Bd. of Appeals of Framingham* (1967) 352 Mass. 54 [223 N.E.2d 679].) (2) Labeling the association "private" does not foreclose consideration of the character of the association. (*Epstein* v. *United States* (1966) 357 F.2d 928 [174 Ct.Cl. 1158].) (3) Membership requirements may be reviewed to determine whether exclusivity is actual or only apparent. (*Carpenter* v. *Zoning Bd., supra.*) (4) Subscription to a particular philosophy may be superficial and irrelevant. (*Jeffery* v. *Planning and Zoning Board of Appeals* (1967) 155 Conn. 451 [232 A.2d 497].)

Applying these criteria to the case at bench, it is obvious that the operation of the private film club qualifies as an entity which is, in reality, one "to which the public is admitted." Although the bylaws purport to define and restrict membership, the complaint alleges that the decision to offer membership rests upon employees of the bookstore. Absolutely no restriction is placed on the exercise of that discretion except identifying oneself, signing a statement of general philosophy and paying $1. Anyone from the general public can enter the premises without restriction and qualify for "membership" with virtually no restrictions. The $1 fee, nominal to say the least, is essentially a charge for use of the film booths. No real or personal property is owned by members in common nor do they enjoy any legal or equitable interest therein; no profits are shared; no obligation of membership is incurred; no ongoing relationship exists with other members who presumably are unaware of the existence of each other. In short, no substantial restrictions are imposed on any member of the public who elects to view films. Coupled with the nature of the premises themselves as a "public place," this unincorporated association offers only a patina of privacy in an attempt to conceal its true public nature. The unincorporated association is a thinly veiled device to escape regulation of an otherwise valid ordinance. There is no substantial difference between this arcade and a conventional movie theatre which charges an admission price and proof of age for "R" rated movies.

Respondents have cited *Gardner* v. *Vic Tanny Compton, Inc.* (1960) 182 Cal.App.2d 506 [6 Cal.Rptr. 490, 87 A.L.R.2d 113], a California case construing the Unruh Act which forbids discrimination in "places of public accommodation or amusement." The court held that Tanny club membership policies reasonably excluded those whom individual managers concluded were unacceptable as potential candidates for an exercise program. Because of their power to exclude on those grounds,

the court found Tanny was not a place of "public accommodation or amusement." While much constitutional water has gone under the bridge casting doubt upon the continued validity of that case, the court concluded that Tanny could not be compelled to accept someone for training if medical history revealed facts warranting considerable legal risk to Tanny and physical risk to the applicant. Neither of these factors is in issue in the case at bench. Moreover, we construe different language than *Tanny*. The *Tanny* court needed to define "places of public accommodation and amusement" under the Unruh Act. The instant ordinance applies to a place "to which the public is admitted." This ordinance expands upon a "place of public accommodation or amusement" by focusing not on the location exclusively, but to a place "to which the public is admitted." In reality, the public is admitted to the film booths without substantial restrictions.

The order is reversed.

Spencer, P. J., and Lillie, J., concurred.

A petition for a rehearing was denied August 26, 1981, and respondents' petition for a hearing by the Supreme Court was denied October 28, 1981.