Opinion
REESE, P. J.
On May 4, 1982, misdemeanor complaints were filed against the defendants alleging a violation of section 103.101(i) of the Los Angeles Municipal Code, which offense was alleged to have occurred on March 15, 1982. Following a hearing the court sustained defendants’ demurrers in which the constitutionality of the ordinance was challenged. The People have appealed.
Section 103.101(i) of the Los Angeles Municipal Code provides: “Visibility of Interior. The permittee shall not maintain any picture arcade unless the entire interior of such premises wherein the pictures are viewed is visible upon entering into such premises. No partially or fully enclosed booths or partially or fully concealed booths shall be maintained.” The trial court sustained the demurrers based upon three grounds: (1) that the ordinance affects an individual’s right to privacy in that a person is foreclosed from viewing sexually explicit movies in the privacy of an enclosed booth and, in addition, no rational basis exists for regulating masturbation in the privacy of an enclosed booth since such conduct is no longer illegal; (2) that the economic impact of the ordinance will be to reduce the number of booths that a given location could operate to an unconstitutional degree; and (3) that the words of the ordinance were vague in that it was uncertain what type of a booth and what place for the booths is required by the ordinance.
On appeal the prosecution contends that the ordinance constitutes a valid exercise of the police power to regulate the interior visibility of arcade booths and that the possibility of some adverse impact upon the economic operation of an arcade or upon the right of privacy does not foreclose exercise of the police power in the manner attempted under section 103.101 (i); and that the ordinance is not unconstitutionally vague. We agree.
In DeMott v. Board of Police Commissioners (1981) 122 Cal.App.3d 296 [175 Cal.Rptr. 879], and EWAP, Inc. v. City of Los Angeles (1979) 97 Cal.App.3d 179, 188 [158 Cal.Rptr. 579], the Courts of Appeal upheld on First Amendment challenges section 103.101(i) as a content-neutral reasonable regulation of the time, place and manner of protected speech. In EWAP, supra, the court observed that the regulation was sufficiently justified if it was within the constitutional power of the state, if it furthered an important *Supp. 6 or substantial governmental interest, if the governmental interest was unrelated to the suppression of free expression, and if the incidental restriction on alleged First Amendment freedoms was no greater than was essential to the furtherance of that interest. The court held: “The prohibition of enclosed or concealed booths in picture arcades easily passes this test. The city has the constitutional power to reasonably regulate and license arcades for purposes of health, safety and public welfare.” (Id., at p. 189.) The court further observed: “The city has a substantial interest in preventing the kind of dangerous or unlawful conduct, as well as the health and safety problems, which may be anticipated in a picture arcade where the booths are concealed or enclosed. The prohibition of such booths furthers the city’s interest in deterring and detecting the use of the premises for such unlawful activity.
“That governmental interest is unrelated to the suppression of free expression and the requirement that the interior of the booths be visible does not restrict First Amendment freedoms. There is no restriction on either the content of the pictures or their dissemination.” (EWAP, supra, at p. 190.) Thus the court held that the ordinance constituted a reasonable exercise of the city’s police power. (Ibid.) In DeMott, supra, 122 Cal.App.3d 296, while recognizing that operation of a motion picture arcade is an activity protected by the First Amendment, the Court of Appeal stated: “No restriction is imposed upon access to the arcade, nor the content of the film. The ordinance merely requires conformity to its provisions for a visible interi- or.” (Id., at p. 302.) Since EWAP had already approved the ordinance as a legitimate exercise of the police power, the court in DeMott held that the ordinance as applied to respondents’ business was unobjectionable.
The court further observed: “Even if respondents are engaged in activity protected by the First Amendment, they are not ‘immune to regulations which do not impair his exercise of his constitutionally protected rights [citation].’ (People v. Perinne, supra, 47 Cal.App.3d 252, 257 [120 Cal.Rptr. 640].)” (Ibid.)
Relying on Weaver v. Jordan (1966) 64 Cal.2d 235 [49 Cal.Rptr. 537, 411 P.2d 289], in which the California Supreme Court invalidated a law enacted by referendum prohibiting pay television on the basis that the state and federal constitutional guarantees of freedom of speech and press protected the means for their expression, defendants urge that the ordinance “enacts a medium ban without the requisite establishment of a ‘clear and present danger.’ ” They argue that the ordinance’s requirement of visibility from a single entrance to such premises eliminates the availability of many film titles to the viewing audience by reducing the number of display machines, makes arcades “economically infeasible, thus directly impairing dis *Supp. 7 tribution of materials protected by the First Amendment” because of the necessity of installing fewer arcades with fewer titles and because “far fewer persons will patronize arcades if the privacy of the customers is made illegal.” Defendants argue that not only is there absent a compelling state interest but that the ordinance furthers no “important or substantial governmental interest.” In this connection, relying upon Pryor v. Municipal Court (1979) 25 Cal.3d 238 [158 Cal.Rptr. 330, 599 P.2d 636], they argue that no lewd or offensive conduct could occur in enclosed booths because “there could be no one to be oifended.” We deem these arguments to be foreclosed by the decisions in EWAP, supra, 97 Cal.App.3d 179 and DeMott, supra, 122 Cal.App.3d 296 which are binding upon us. (Auto Equity Sales, Inc. v. Superior Court (1962) 57 Cal.2d 450 [20 Cal.Rptr. 321, 369 P.2d 937].) We farther note that the ordinance on its face does not ban movie arcades. Thus, Jordan, supra, 64 Cal.2d 235, does not require us to disregard as binding EWAP or DeMott. Finally, on its face the ordinance does not require the use of fewer display machines, limit the number of persons viewing the films, nor reduce the number of film titles that may be shown.
Defendants claim that the development of a factual record in the case at bench distinguishes the present case from the Court of Appeal decision in EWAP, supra, 97 Cal.App.3d 179. Defendants overlook the well-established rule that a demurrer lies to challenge only the pleadings on their face; evidentiary matters are therefore not properly presented in support of, or in opposition to, a demurrer. (People v. Williams (1979) 97 Cal.App.3d 382, 387-388, 391 [158 Cal.Rptr. 778].) Accordingly, the trial court erred in considering the evidentiary showing made by the defendants and the People in ruling upon the demurrer, which presented only an issue of law. (Id., at p. 391.)
At. oral argument defendants urged us to construe their demurrer as a motion to dismiss and to consider the evidence presented below as supportive of such motion; the People did not stipulate that their appeal be determined on this basis. In the absence of a stipulation, we believe that it would be inappropriate to regard the order appealed from as one granting a motion to dismiss.
Defendants also urge that to be valid under the First Amendment the incidental restriction on free expression must be no greater than that essential to further the important or substantial governmental interest and that the ordinance fails to satisfy this requirement. On this point they urge that the point of visibility need not be at the entrance of the arcade but could be established from any aisle space, or in the center of the room, thereby apparently making many more viewing machines available; they further urge that the purported need for visibility conflicts with the use of multiple *Supp. 8 viewing rooms on the same or different floors so that an arcade could maximize the number of titles available to the viewing public in the available space, and that visibility could be maintained by means of a surveillance system of mirrors or cameras which would reveal the interior of booths without exposing customers to the unwanted scrutiny of other customers or passersby.
We question whether such alternative procedures would be any less intrusive than that which the city council chose. In any event, these contentions are properly addressed, not to this court, but to the city council which enacted the ordinance in question. Under the police power a municipality may impose regulations upon the construction and maintenance of business premises reasonably necessary to protect the health, safety and general welfare of the business’ patrons and other members of the public. “Every presumption favors the reasonableness of a legislative enactment.” (Brix v. City of San Rafael (1979) 92 Cal.App.3d 47, 50 [154 Cal.Rptr. 647].) Courts should not set aside or disregard the legislative body’s determination of a need for the exercise of a police power regulation and the type of regulation necessary to meet the need “ ‘unless the legislative decision is clearly and palpably wrong and the error appears beyond reasonable doubt from facts or evidence which cannot be controverted, and of which the courts may properly take notice.’” (Antonello v. City of San Diego (1971) 16 Cal.App.3d 161, 167 [93 Cal.Rptr. 820]; see also Brix v. City of San Rafael, supra, at pp. 50-51.)
Unlike section 103.101(g), prohibiting the showing of pictures between 2 a.m. and 9 a.m., held by our Supreme Court to be violative of the free speech provisions of the federal and state Constitutions (People v. Glaze (1980) 27 Cal.3d 841 [166 Cal.Rptr. 859, 614 P.2d 291]), the ordinance before us does not prevent customers and others from exercising the right to view motion pictures in arcades and thus does not involve even the incidental infringement of First Amendment rights. That the ordinance may impose an economic burden upon arcade operators, as defendants argue, does not in itself constitute a basis for finding First Amendment invalidity. (Antonello v. City of San Diego, supra, at p. 167.) Furthermore, defendants have not shown that the means selected were “palpably erroneous” nor the ordinance’s long-term impact, if any, upon those who may wish to view the films. (Cf. People v. Glaze, supra, at p. 847.) Finally, even assuming arguendo that the ordinance does incidentally infringe First Amendment rights, we hold that the ordinance meets the constitutional criteria applicable to regulation of commercial speech: The ordinance implements a substantial governmental interest in deterring offensive and potentially criminal conduct, directly advances that interest, and reaches no further than necessary *Supp. 9 to accomplish the government’s objectives. (Metromedia, Inc. v. San Diego (1981) 453 U.S. 490, 507 [69 L.Ed.2d 800, 815, 101 S.Ct. 2882].)
Defendants assert that People v. Glaze, supra, 27 Cal.3d 841, EWAP, supra, 97 Cal.App.3d 179, DeMott, supra, 122 Cal.App.3d 296, and People v. Adult World Book Store (1980) 108 Cal.App.3d 404 [166 Cal.Rptr. 519] are not controlling because the ordinance violates the California right of privacy under article I, section 1 of the state Constitution. They argue that if under Pryor v. Municipal Court, supra, 25 Cal.3d 238, a person cannot be prosecuted for conduct which is not offensive to another, then one may with impunity engage in such conduct in an enclosed movie arcade booth and that the government “may not prevent the right from being exercised by prohibiting businesses from establishing and providing enclosed booths for this purpose.”[1] None of the authorities which have thus far construed the privacy protection of article I, section 1 has suggested that government may not in the exercise of its police power protect public health and safety by regulating the time, place, and manner of specified conduct. Indeed, the contrary appears true. In People v. Privitera (1979) 23 Cal.3d 697 [153 Cal.Rptr. 431, 591 P.2d 919, 5 A.L.R.4th 178], the California Supreme Court held that, despite the claim of privacy under the California Constitution, a person may not prescribe laetrile as a cure for cancer. In People v. Davis (1979) 92 Cal.App.3d 250, 260 [154 Cal.Rptr. 817], the Court of Appeal rejected the defendant’s argument that the state constitutional right of privacy immunized him from criminal prosecution for his use of cocaine. Both cases relied upon White v. Davis (1975) 13 Cal.3d 757 [120 Cal.Rptr. 94, 533 P.2d 222], which had concluded that the state constitutional right in question was designed primarily to guard against unnecessary governmental surveillance and collection of records. (But see City of Santa Barbara v. Adamson (1980) 27 Cal.3d 123, 130, fn. 3 [164 Cal.Rptr. 539, 610 P.2d 436, 12 A.L.R.4th 219].) This predominant purpose is not affected by recognizing the legitimate exercise of the police power as manifested in Los Angeles Municipal Code section 103.101 (i). Carried to its logical extreme, defendants’ argument would leave little room for governmental regulation of individual conduct in the exercise of the police power. We do not believe that the voters in enacting article I, section 1 intended such a drastic result.[2]
*Supp. 10 Finally, contrary to defendants’ argument, it does not follow from Pryor’s immunity from criminal prosecution of those who engage privately in otherwise prosecutable conduct that government is impotent to impede or prevent such conduct from occurring on business premises operated pursuant to permit. Indeed, a legitimate purpose underlying enactment of section 103.101 (i) was to protect the peace, welfare and privacy of persons viewing motion pictures in adult motion picture arcades by deterring the offensive, dangerous or inflammatory conduct of others. (See EWAP, Inc. v. City of Los Angeles, supra, 97 Cal.App.3d at pp. 189-190.) Thus, defendants cannot avail themselves of the right of privacy in their attempt to invalidate the ordinance. (See Ellwest Stereo Theaters, Inc. v. Wenner (9th Cir. 1982) 681 F.2d 1243; cf. People v. Privitera, supra, 23 Cal.3d 697; People v. Davis, supra, 92 Cal.App.3d 250.) As the Court of Appeal noted in People v. Adult World Book Store, supra, 108 Cal.App.3d 404, 410: “Not everyone who enters a dirty bookstore (fn.) (euphemistically adjectived ‘adult’), expects to be molested, propositioned, or subjected to an open view of live homosexual acts of others. Indeed, in entering such a store, a member of the public exercises his or her own right of privacy and the First Amendment right to see, read, and observe on film sexually explicit, even sordid activities. This is what the store purports to offer. To attribute to each incoming customer the concurrent expectation inter alia that he or she will be solicited to perform sexual acts . . . would have a chilling effect upon such fundamental rights. It follows that those who perform sexual acts within view of neutral customers of the stores, or who expose themselves to them or solicit them to perform or participate in sexual activity, undeniably do so in a place open to the public with the reasonable expectation that the customers (at least certain of them) are likely to be offended. (Fn. omitted.)”
Defendants argue that the ordinance is unconstitutionally vague. We disagree. Whenever possible courts are to uphold the constitutionality of statutes (In re Kay (1970) 1 Cal.3d 930, 942 [83 Cal.Rptr. 686, 464 P.2d 142]), and are to give statutes a commonsense interpretation. (Moyer v. Workmen’s Comp. Appeals Bd. (1973) 10 Cal.3d 222, 230 [110 Cal.Rptr. 144, 514 P.2d 1224].) As we have noted, the intent of the city council in enacting section 103.101 (i) was to prohibit the enclosure of booths so as to discourage violations of law and to protect patrons of movie arcade establishments from offensive, dangerous, and unlawful conduct. (See EWAP, supra, 97 Cal.App.3d at p. 191; DeMott v. Board of Police Commissioners, supra, at p. 301.) To this end the section establishes two *Supp. 11 requirements: First, that the interior of the booth used for viewing must be open to view so that the occupant’s conduct while watching the film can be observed; second, that the entire interior of the premises be visible from its entrance. It is well established that precision of regulation must be the touchstone in determining the constitutionality of ordinances which affect First Amendment rights. (Interstate Circuit v. Dallas (1968) 390 U.S. 676, 682 [20 L.Ed.2d 225, 231, 88 S.Ct. 1298]; N. A. A. C. P. v. Button (1963) 371 U.S. 415, 438 [9 L.Ed.2d 405, 421, 83 S.Ct. 328]; People v. Glaze, supra, 27 Cal.3d 841-849; Burton v. Municipal Court (1968) 68 Cal.2d 684, 690-691 [68 Cal.Rptr. 721, 441 P.2d 281].) Judged by this standard, we conclude that the section in question provides precise standards capable of objective measurement and that the ordinance gives fair notice as to the conduct required and prohibited. (Cf. Winters v. New York (1948) 333 U.S. 507, 515-516 [92 L.Ed.2d 840, 849-850, 68 S.Ct. 665]; Welton v. City of Los Angeles (1976) 18 Cal.3d 497, 504-505 [134 Cal.Rptr. 668, 556 P.2d 1119]; In re Kay, supra, 1 Cal.3d at pp. 941-947.) For this reason defendants’ argument that the ordinance is capable of arbitrary or capricious enforcement is without merit. (Cf. Burton v. Municipal Court, supra.)
Defendants’ contention that the ordinance is preempted by state law is likewise without merit. The statute does not create a new standard of sexual conduct nor does it purport to criminalize sexual activity which is not criminal under state law. (EWAP, supra, 97 Cal.App.3d at p. 191.) Nothing in Brix v. City of San Rafael, supra, 92 Cal.App.3d 47 nor People v. Glaze, supra, 27 Cal.3d 84 prohibits the city council from enforcing by criminal sanctions the licensing provisions with respect to motion picture arcades. As indicated, nothing in the statutory scheme of which section 103.101(i) is a part, creates new violations for sexual conduct not criminal under state law or any new standard for sexual conduct. (EWAP, Inc. v. City of Los Angeles, supra.)
The order of dismissal is reversed. The matter is remanded to the trial court with directions to overrule the demurrers and to proceed according to law.
Cooperman, J., concurred.

In asserting the California constitutional right of privacy defendants correctly concede that the privacy protection of the United States Constitution is less broad. (See City of Santa Barbara v. Adamson (1980) 27 Cal.3d 123, 130, fn. 3 [164 Cal.Rptr. 539, 610 P.2d 436, 12 A.L.R.4th 219]; People v. Privitera (1979) 23 Cal.3d 697, 702, fn. 2 [153 Cal.Rptr. 431, 591 P.2d 919, 5 A.L.R.4th 178].)

In Privitera, supra, the Supreme Court applied a rational basis test in resolving the privacy versus police power issue before it. The court noted that the United States Supreme Court applied the same test in resolving privacy claims under the federal Constitution and recognized the broad police powers of the states in the area of health and safety regulation. *Supp. 10 (23 Cal.3d at pp. 702-705.) We note, however, that in City of Santa Barbara v. Adamson, supra, 27 Cal.3d at pages 130, 131, the court applied a compelling interest test in adjudicating the right of privacy claim of article I, section 1 claim before it. (See also White v. Davis, supra, 13 Cal.3d at p. 775.)