[No. D002564. Fourth Dist., Div. One. Dec. 18, 1985.]

DELUXE THEATER & BOOKSTORE, INC., et al.,
Plaintiffs and Appellants, v.
CITY OF SAN DIEGO et al., Defendants and Respondents.

**COUNSEL**

Joshua Kaplan, Joseph W. Bryans and Bryans & House for Plaintiffs and Appellants.

John W. Witt, City Attorney, Ronald L. Johnson, Senior Chief Deputy City Attorney, Eugene P. Gordon, Chief Deputy City Attorney, and Anthony J. Shanley, Deputy City Attorney, for Defendants and Respondents.

**OPINION**

**WIENER, J.**—Plaintiffs Deluxe Theater & Bookstore, Inc., Jamie Porras and John F. Kiernan challenge the constitutionality of an ordinance enacted by the City of San Diego which attempts to prohibit private "peep show" booths showing sexually explicit films. Consistent with precedent, we reject the contention and affirm the trial court's order denying a preliminary injunction.

I

Deluxe operates the Hi-Lite Theater & Bookstore in San Diego, which it refers to as an "adult arcade." The premises includes approximately 30 private "peep show" booths, each featuring eight "adult" video presentations from which the customer may choose. Prior to the enactment of section 33.3317 of the San Diego Municipal Code, the booths at the Hi-Lite Theater, although not fully enclosed, were constructed in such a way as to prohibit passers-by from either viewing the films being shown in the booth or observing possibly offensive conduct by the customer in the booth.

Section 33.3317, enacted in September 1984, provides in relevant part as follows: "No peep show establishment shall be maintained or operated unless the complete interior of the arcade where the pictures are viewed is

visible upon entrance to such picture arcade. No partially or fully enclosed booths or partially or fully concealed booths shall be maintained."[1] Seeking to enjoin enforcement of the ordinance, plaintiffs based this action primarily on two independent grounds. They first contended the ordinance impermissibly restricted an activity protected by the First Amendment. They next argued that the right to privacy guaranteed by article I, section 1 of the California Constitution protects a customer's right to engage in sexual conduct in response to viewing a video presentation so long as such conduct occurs in private and thus will not be seen by persons likely to be offended by such conduct. The trial court rejected the contentions and refused to issue a preliminary injunction. In this appeal plaintiffs again attack the San Diego ordinance, renewing their principal arguments made in the court below.

## II

Several earlier cases have considered whether ordinances virtually identical to section 33.3317 constituted unconstitutional restrictions on protected First Amendment activity. The first case to consider such an ordinance, *EWAP, Inc.* v. *City of Los Angeles* (1979) 97 Cal.App.3d 179 [158 Cal.Rptr. 579] characterized it as a "content-neutral . . . regulation[] of the time, place and manner of protected speech . . . ." (*Id.* at p. 189.) Such a regulation, *EWAP* concluded, must be "necessary to further significant governmental interests." (*Ibid*; accord *DeMott* v. *Board of Police Commissioners* (1981) 122 Cal.App.3d 296, 301 [175 Cal.Rptr. 879]; *County of Sacramento* v. *Superior Court* (1982) 137 Cal.App.3d 448, 453-454 [187 Cal.Rptr. 154]; *Ellwest Stereo Theatres, Inc.* v. *Wenner* (9th Cir. 1982) 681 F.2d 1243, 1246.) Applying this standard the *EWAP* court concluded:

"The prohibition of enclosed or concealed booths in picture arcades easily passes this test. The city has the constitutional power to reasonably regulate and license arcades for purposes of health, safety and public welfare. [Citations.]

"As was pointed out in *People* v. *Perrine* [(1975)] 47 Cal.App.3d [252], 258 [120 Cal.Rptr. 640]: 'A picture arcade is a business, carried on in a

---

[1]A related statute, section 33.3301 of the municipal code, defines "peep show establishment" as ". . . any place to which the public is permitted or invited wherein coin or slug operated or electronically, electrically or mechanically controlled still or motion picture machines, projectors or other image producing devices are maintained to show, images to five (5) or fewer persons per machine at any one time and where the images so displayed are distinguished or characterized by an emphasis on depicting or describing 'specified sexual activities' or 'specified anatomical areas.'" The latter two terms are defined elsewhere in the statute.

place which the public generally is invited to enter and use. Since it is a place of entertainment, its patrons are not expected to enter with the solemnity of a business visitor at a mercantile establishment. Ordinarily those entering a picture arcade are seeking amusement, relaxation or excitement, possibly sexual stimulation or gratification, depending on the taste or mood of the individual and the kind of pictures exhibited. Among such visitors it is foreseeable that some will be predisposed to conduct which is offensive, dangerous to others and even unlawful. The potential for misuse of the premises, for law violations, and for bodily harm to law-abiding patrons, is obvious, as is the concomitant need for [deterring such conduct].'

"The city has a substantial interest in preventing the kind of dangerous or unlawful conduct, as well as the health and safety problems, which may be anticipated in a picture arcade where the booths are concealed or enclosed. The prohibition of such booths furthers the city's interest in deterring and detecting the use of the premises for such unlawful activity.

"That governmental interest is unrelated to the suppression of free expression and the requirement that the interior of the booths be visible does not restrict First Amendment freedoms. There is no restriction on either the content of the pictures or their dissemination." (*EWAP, Inc., supra,* 97 Cal.App.3d at pp. 189-190; see also *DeMott, supra,* 122 Cal.App.3d at pp. 301-302; *County of Sacramento, supra,* 137 Cal.App.3d at p. 454.)

We similarly view section 33.3317 as an acceptable "time, place and manner" regulation of peep show businesses.

### III

Plaintiffs also argue that the San Diego ordinance unconstitutionally infringes on the privacy rights of the customers of the arcade. Noting that California courts have recognized "a right of privacy in sexual matters . . . that . . . is not limited to the marital relationship" (see *Morales* v. *Superior Court* (1979) 99 Cal.App.3d 283, 290 [160 Cal.Rptr. 194]), they claim that such a right cannot be infringed absent a compelling governmental interest. (*Ibid*; see also *City of Santa Barbara* v. *Adamson* (1980) 27 Cal.3d 123, 131 [164 Cal.Rptr. 539, 610 P.2d 436].) In this regard they point out that consensual sexual conduct is basically not criminally punishable unless the actor "knows or should know of the presence of persons who may be offended by [the] conduct." (*Pryor* v. *Municipal Court* (1979) 25 Cal.3d 238, 256 [158 Cal.Rptr. 330, 599 P.2d 636].) Extrapolating from these premises, plaintiffs contend that masturbation in private video booths is protected by the California constitutional right of privacy because the government can

assert no compelling interest in prohibiting such conduct from occurring in a location not open to the view of those who might be offended.

Like their earlier First Amendment claims, plaintiffs' novel privacy theory has also been raised and rejected in prior cases. (See *Ellwest Stereo Theatres, Inc.* v. *Wenner, supra,* 681 F.2d 1243, 1247-1248; *People* v. *B & I News, Inc.* (1984) 164 Cal.App.3d Supp. 1, 9-10 [211 Cal.Rptr. 346]; but see *id.*, at pp. 11-15 (dis. opn.).) Whatever the developing parameters of the right of privacy will someday include, at present they remain limited and largely undefined. While sexual activities certainly implicate privacy concerns, there is no talismanic equivalency. We know of no case which has extended constitutional privacy rights to prevent government from regulating profitmaking businesses which seek to provide facilities for their customers' sexual frolics. Although undoubtedly dictum in the context of that case, the Supreme Court impliedly approved an ordinance similar to section 33.3317 in *People* v. *Glaze* (1980) 27 Cal.3d 841, 848 [166 Cal.Rptr. 859, 614 P.2d 291] by noting that the "open booth" requirement would "reduce masturbation in picture arcades." (See also *DeMott* v. *Board of Police Commissioners, supra,* 122 Cal.App.3d at p. 302, fn. 3.) Whatever constitutional protection such activity may be entitled to when it occurs in private homes, California law still accepts the proposition that the government may legitimately seek to prevent masturbation in other locales.

## IV

Finally, plaintiffs argue that section 33.3317 runs afoul of state law, and is thus preempted, because it fails to exempt theaters "primarily devoted to theatrical performances." (Pen. Code, § 318.6.) However, since the San Diego ordinance attempts only to regulate peep shows, it could have no application to theaters and thus any exemption would be superfluous. Furthermore, Penal Code section 318.6 by its terms applies only to "*live* acts, demonstrations or exhibitions which occur in public places . . . ." Since peep show exhibitions are, by definition, not live, the statute is inapplicable.[2]

---

[2]DeLuxe also contends that the "open booth" requirement makes it economically impossible to operate a peep show arcade because nonpaying customers cannot be prevented from viewing the video presentations. It points to other municipal ordinances which impliedly sanction peep show establishments as lawful businesses and argues that section 33.3317 infringes on its due process right to conduct a lawful business.

The record at the preliminary injunction stage is devoid of reference to the economic feasibility of showing films in open booths. We view DeLuxe's argument as premature.

## Disposition

The order denying a preliminary injunction is affirmed.

Kremer, P. J., and Kintner, J.,* concurred.

---

*Assigned by the Chairperson of the Judicial Council.